Donald E. Watnick (DW 6019)
LAW OFFICES OF DONALD WATNICK
292 Madison Avenue, 17th Floor
New York, New York 10017
(212) 213-6880

*Attorneys for Plaintiff*
Christian Augustin von Hassell
*a/k/a Agostino von Hassell*



SENT TO CHAMBERS
FOR REVIEW

MAY 16 2007

U.S.D.C.S.D.N.Y.
CASHIERS

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------X

CHRISTIAN AUGUSTIN VON HASSELL a/k/a
AGOSTINO VON HASSELL,

          Plaintiff,

   - against -

ALAIN SAINT-SAËNS and UNIVERSITY
PRESS OF THE SOUTH, INC.,

          Defendants.

-------------------------------------------------------------X

07 Civ.3477 (LAK)

<u>FIRST AMENDED COMPLAINT</u>

<u>JURY TRIAL DEMANDED</u>

Plaintiff, Christian Augustin von Hassell a/k/a Agostino von Hassell, by his undersigned

attorneys, Law Offices of Donald Watnick, for his Complaint against defendants Alain Saint-

Saëns and University Press of the South, Inc., hereby alleges and argues as follows:

<u>NATURE OF THE ACTION</u>

1.    This is an action for breach of contract, breach of the duty of good faith and fair

dealing, fraud and detrimental reliance in relation to a book publishing agreement between

Plaintiff Christian Augustin von Hassell a/k/a Agostino von Hassell ("von Hassell" or

"Plaintiff") as the author and Defendants Alain Saint-Saëns ("Saint-Saens") and University Press

of the South, Inc. ("University Press") as publisher.

PARTIES

2.    Plaintiff von Hassell is domiciled in and is a citizen of the Commonwealth of Virginia, as well as a resident of the State of New York, with a residence located in New York County, and a principal place of business located at 399 Park Avenue, New York, New York. At all times, Plaintiff von Hassell conducted and participated in all or substantially all of the transactions and communications described herein from his office in the State of New York.

3.    Defendant University Press is a corporation organized under the laws of the State of Louisiana with its principal place of business located at 5500 Prytania Street, PMB 421, New Orleans, Louisiana, and is a citizen of the State of Louisiana.

4.    Defendant Saint-Saëns, upon information and belief, is the President of University Press, and is domiciled in and is a citizen of the State of Louisiana.

JURISDICTION AND VENUE

5.    This Court has jurisdiction over this matter based on diversity of citizenship, pursuant to 28 U.S.C. §1332(a) because the parties are citizens of different states and the amount in controversy exceeds $75,000.

6.    At all relevant times, Defendants have conducted business in the State of New York, including through one or more interactive web-sites and in connection with the transactions, facts and circumstances set forth herein.

7.    Venue is appropriate in this District pursuant to 28 U.S.C. §1391 because a substantial part of the events and omissions giving rise to the claims herein occurred in this District.

8.    Pursuant to Fed.R.Civ.P. 38(b), Plaintiff hereby demands a jury trial of the claims asserted herein.

## FACTS COMMON TO ALL ALLEGATIONS

**Plaintiff is an Established Author on Military History**

9.      In this action, Plaintiff seeks to recover more than $350,000 in damages arising

from Defendants' failure to perform under a book publishing agreement and to keep legally

binding promises, and fraudulently inducing Plaintiff to execute a publishing agreement with

respect to Plaintiff's book, *Military High Life: Elegant Food, Histories and Recipes* (the

"Book"). (A copy of the cover of the Book is annexed as Exhibit A hereto.)

10.      As described in a 2006 review in *The Wall Street Journal*, the Book is a "coffee-

table volume" that is intended to be a tour of military kitchens and officers' messes over the

years, and "includes 141 beautiful color illustrations and 73 interesting recipes." von Hassell,

who was a captain in the U.S. Marine Corps, created and is the lead author of the Book.

11.      Plaintiff also has authored several other books about the U.S. Marine Corps and

the U.S. military, including *Warriors: The United States Marine Corps; Strike Force: Marine

Corps Special Operations; West Point: The Bicentennial Book;* and *In Honor of America.* He is

most recently co-author of the historical volume *Alliance of Enemies: The Untold Story of the

Secret American and German Collaboration to End World War II*, published by St. Martin's

Press.

12.      To develop and produce the Book, including fees for design, photography,

research, writing and editing, Plaintiff incurred costs of in or about $100,000. Plaintiff also

devoted hours of his own time to developing and writing the Book.

**The Publishing Agreement Between the Parties**

13.      By agreement dated May 8, 2006, Plaintiff and University Press executed a

Publishing Agreement, whereby Plaintiff granted University Press the exclusive world-wide

rights to publish and sell Plaintiff's book in the English language. The parties thereafter executed an Addendum to the Publishing Agreement. (A copy of the Publishing Agreement and Addendum thereto (collectively, the "Agreement") are annexed as Exhibit B hereto and fully incorporated herein.)

14.    The Agreement provides that University Press has "the sole and exclusive right to . . . print, publish and sell" the Book in the English language. The Agreement further states that University Press "has the exclusive, unlimited right to license or permit others to publish, reproduce or provide the work in whole or in part," and that these rights include all forms of publication.

15.    Under the Agreement, University Press agreed to market and promote the Book and work with Plaintiff in "an equitable manner" to distribute the Book.

16.    The Agreement imposed start-up costs on Plaintiff for the publication and promotion of the Book. Plaintiff agreed to pay to University Press $500, upon signing the Agreement, $2,000 for the costs of publication, and to pay all costs of printing of the Book.

17.    In executing the Agreement, University Press agreed to pay Plaintiff royalties equal to 50% of the net cash receipts from the sale of the Book.

18.    University Press also agreed to "provide in a timely manner sales reports to the [Plaintiff]," which sales reports were to be sent every two months and contain all relevant sales information, and to allow Plaintiff or "his representative to inspect sales records" for the Book.

19.    The Agreement stated that it would terminate five years after the publication date if the Book was out of print and the publisher did not re-print it after a written demand by Plaintiff.

20.    Finally, the Agreement, which contained no choice-of-forum clause, is governed

by Louisiana law.

**Defendants' False Representations to the Plaintiff**

21.    Prior to Plaintiff's execution of the Agreement, University Press and Saint-Saëns falsely represented to Plaintiff that University Press was a full service publisher and book distributor, with the sales infrastructure and personnel to market, promote, sell and distribute books and a strong sales record on behalf of other authors. Defendants falsely represented the existence of, and Plaintiff relied on the existence of, University Press having a fully functioning on-line, web-based sales system, telephone systems to sell the Book and facilities and personnel to store and ship substantial inventory of the Book.

22.    Defendants also falsely represented to Plaintiff that, if he signed a publishing agreement with University Press, Defendants would utilize their affiliate and partner publishing house Presse Universitaire du Nouveau Monde in Europe to sell the Book.

23.    In addition, Defendants falsely represented that, if Plaintiff signed a publishing agreement with University Press, Defendants would have a full distribution plan in place, complete with advertising and promotional articles. Defendants also falsely represented that they had extensive experience is developing and implementing such promotional plans.

24.    Defendants falsely stated that such advertising and promotional plan would include listing the Book on "Amazon.com" and other web-sites, and that placing the Book with distributors and into book stores would be easy and a matter of course, in light of their alleged experience.

25.    Moreover, Defendants represented to Plaintiff that the Book would generate at least $150,000 in royalties to Plaintiff.

26.    After the Agreement was fully executed between Plaintiff and University Press,

Defendants continued to falsely represent and promise to Plaintiff that they were using and would use their best efforts to sell, market and promote the Book and that they were capable of and experienced in doing so.

27.    By virtue of its exclusive rights to sell, market, promote and distribute the Book over, at a minimum, a five year period, University Press had a duty to use its best efforts to perform its obligations under the Agreement.

### Plaintiff Has Fully Performed Under the Agreement

28.    Plaintiff has fully performed the Agreement, including paying to University Press a total of $2,500, and delivering to University Press 5,000 copies of the Book after University Press approved the manuscript.

29.    Plaintiff paid approximately $42,000 to print 6,000 copies of the Book, including the 5,000 copies delivered to University Press. Plaintiff paid an additional approximately $4,500 to ship copies of the Book to University Press.

30.    Plaintiff also has incurred more than $34,000 in costs associated with printing, developing, distributing, marketing and promoting the Book, as well as devoting extensive amounts of his own time to marketing and promoting the Book.

### Defendants Have Failed to Perform Under the Agreement and Have Otherwise Acted Improperly

31.    University Press has failed to perform any of its obligations under the Agreement, including without limitation failing to promote, market, sell or distribute the Book, failing to work with Plaintiff to promote, market and sell the Book and failing to comply with its obligations to provide royalty reports and sales information to Plaintiff.

32.    In particular, Defendants have failed to comply with their obligations to make

efforts to distribute the Book on line, to distributors or to book-stores. Instead of promoting and marketing the Book to maximize sales, Defendants have undercut the Book by not coordinating with Plaintiff on promotional efforts, disregarding sales leads, issuing promotional material that was incomplete, illiterate or inaccurate and not timely shipping the Book.

33.     Potential distributors and purchasers of the Book, including book stores and universities, who have attempted to communicate with Defendants to order the Book, have been unable to do so because University Press did not have fully functioning telephone lines or a web-based sales system, or have found that Defendants did not respond to their communications.

34.     In further violation of the Agreement, University Press failed to pay royalties, and failed to issue royalty reports as provided for in the Agreement. University Press also refused to allow Plaintiff to inspect sales records for the Book, even though the Agreement entitled Plaintiff to inspect such records.

35.     Upon information and belief, Defendants' actions in breach of the Agreement and their promises to Plaintiff have been purposeful and willful. Defendants have refused to communicate with Plaintiff directly, informed Plaintiff's representatives that Defendants will not read any emails sent by Plaintiff and, upon information and belief, deleted emails from Plaintiff about selling and promoting the Book, and have refused to engage in any sales, marketing or promotional activities for the Book.

36.     Moreover, when Plaintiff demanded that University Press fulfill its obligations under the Agreement, Defendants then insisted that Plaintiff first pay to Defendants as much as an additional $30,000 before they would comply with their binding and pre-existing obligations.

37.     As a result of University Press' breaches of the Agreement, and Defendants fraudulent misrepresentations and failure to abide by its binding promises and commitments,

Plaintiff has been damaged in an amount to be determined at trial, but in no event less than $200,000. Defendants' wrongful actions have caused further damage to Plaintiff because he has lost hundreds of thousands of dollars in profits that he would have made on the Book, his reputation as an author has been damaged, and he has been forced to incur substantial costs, including attorneys' fees. The amounts of these foregoing damages are no less than $350,000, and will be proven at trial.

## FIRST CAUSE OF ACTION
### (Breach of Contract against Defendant University Press)

38.    Plaintiff repeats and realleges the allegations contained in paragraphs 1 to 37 with the same force and effect as if fully set forth and incorporated herein.

39.    As set forth herein, the Agreement was a valid and enforceable agreement between Plaintiff and University Press, which obligated University Press, *inter alia*, to sell, promote, market and distribute the Book, pay royalties to Plaintiff for sales of the Book, and provide to Plaintiff royalty reports and information about sales of the Book.

40.    At all times, Plaintiff fully performed the Agreement.

41.    University Press unlawfully breached the Agreement by failing and refusing to sell, promote, market and distribute Book, failing and refusing to pay royalties to Plaintiff for sales of the Book, failing and refusing to provide to Plaintiff royalty reports or sales information for the Book, and engaging in other conduct that unlawfully violated the Agreement.

42.    As a direct result of University Press' foregoing breaches, Plaintiff has been damaged in an amount to be determined at trial but equal to at least $200,000, plus lost profits for the Book in an amount to be determined at trial but equal to at least $150,000, damage to his reputation as an author, interest and costs, including attorneys' fees.

## SECOND CAUSE OF ACTION
### (Breach of Duty of Good Faith and Fair Dealing against Defendant University Press)

43.  Plaintiff repeats and realleges the allegations contained in paragraphs 1 to 42 with the same force and effect as if fully set forth and incorporated herein.

44.  As a matter of law, including without limitation under La. Civil Code Section 1983, and by virtue of having exclusive rights to sell, promote, market and distribute the Book, the Agreement imposed upon University Press a duty of good faith and fair dealing, including without limitation a duty to use best efforts to fulfill the terms and conditions of the Agreement, and not engage in deceptive and dishonest acts.

45.  By failing and refusing to undertake appropriate efforts to sell, market, promote and distribute the Book, and then insisting that it would not do so unless Plaintiff paid University Press as much as $30,000 in excess of what it was due under the Agreement, University Press unlawfully breached its duty of good faith and fair dealing.

46.  University Press further unlawfully breached its duty of good faith and fair dealing by engaging in deceptive and dishonest acts, including refusing to communicate with Plaintiff and his representatives and making false and inaccurate statements about its efforts to sell, market, promote and distribute the Book.

47.  As a direct result of University Press' foregoing breaches, Plaintiff has been damaged in an amount to be determined at trial but equal to at least $200,000, plus lost profits for the Book in an amount to be determined at trial but equal to at least $150,000, damage to his reputation as an author, interest and costs, including attorneys' fees.

## THIRD CAUSE OF ACTION
### (Fraud against both Defendants)

48.  Plaintiff repeats and realleges the allegations contained in paragraphs 1 to 47 with

the same force and effect as if fully set forth and incorporated herein.

49.    In inducing plaintiff to execute the Agreement, Defendants represented that University Press was a full service publisher and book distributor, with the sales infrastructure and personnel to distribute books and a strong sales record on behalf of other authors.

50.    Defendants further represented that University Press' sales infrastructure included a fully functional on-line web-based sales system, both the telephone systems and personnel to sell and promote the Book, place and accept orders for the Book and distribute the Book, a facility from which inventory of the Book could be stored and distributed and European affiliates to sell and promote the Book.

51.    Defendants also represented that they would put in place a promotional plan for the Book and that they had the experience and track-record to readily develop and implement such a plan.

52.    Each of these representations by Defendants was material.

53.    Each of these representations by Defendants was false and misleading at the time that they were made.

54.    Defendants knowingly or recklessly made each of these representations with full knowledge that each of them was materially false and misleading when made to Plaintiff.

55.    Defendants made these false and misleading representations for the purpose of inducing Plaintiff to execute the Agreement and engage in business dealings with Defendants with respect to the Book.

56.    Plaintiff reasonably relied upon Defendants' false and misleading representations, in executing the Agreement and engaging in business dealings with Defendants, and would not have otherwise executed the Agreement and engaged in business dealings with Defendants.

57.    As a direct and proximate result of Defendants' false and misleading

representations, Plaintiff has sustained damages in an amount to be proven at trial but equal to at

least $200,000, plus lost profits for the Book in an amount equal to at least $150,000, damage to

his reputation as an author, interest and costs, including attorneys' fees.

## FOURTH CAUSE OF ACTION
### (Detrimental Reliance against both Defendants)

58.    Plaintiff repeats and realleges the allegations contained in paragraphs 1 to 57 with

the same force and effect as if fully set forth and incorporated herein.

59.    In inducing Plaintiff to execute the Agreement, Defendants represented that

University Press was a full service publisher and book distributor, with the sales infrastructure

and personnel to distribute books and a strong sales record on behalf of other authors.

60.    Defendants further represented that University Press' sales infrastructure included

a fully functional on-line web-based sales system, both the telephone systems and personnel to

sell and promote the Book, place and accept orders for the Book and distribute the Book, a

facility from which inventory of the Book could be stored and distributed and European affiliates

to sell and promote the Book.

61.    Defendants also represented that they would put in place a promotional plan for

the Book and that they had the experience and track-record to readily develop and implement

such a plan.

62.    Each of these representations by Defendants was material.

63.    Each of these representations by Defendants was false and misleading at the time

that they were made.

64.    Defendants knowingly or recklessly made each of these representations with full

knowledge that each of them was materially false and misleading when made to Plaintiff.

65.    Defendants made these false and misleading representations for the purpose of inducing Plaintiff to execute the Agreement and engage in business dealings with Defendants with respect to the Book.

66.    Plaintiff reasonably relied to his own detriment upon Defendants' false and misleading representations, in executing the Agreement and engaging in business dealings with Defendants, and would not have otherwise executed the Agreement and engaged in business dealings with Defendants.

67.    As a direct and proximate result of Defendants' false and misleading representations, upon which Plaintiff reasonably relied to his own detriment, Plaintiff has sustained damages in an amount to be proven at trial but equal to at least $200,000, plus lost profits for the Book in an amount equal to at least $150,000, damage to his reputation as an author, interest and costs, including attorneys' fees.

WHEREFORE, plaintiff Christian Augustin von Hassell a/k/a Agostino von Hassel respectfully requests judgment against defendants Alain Saint-Saens and University Press of the South, Inc. as follows:

(i)    Awarding money damages as set forth in each cause of action to compensate Plaintiff's losses in an amount to be proven at trial, but in no event less than $200,000.

(ii)    Awarding money damages as set forth in each cause of action for Plaintiff's lost profits in an amount to be proven at trial but in no event less than $150,000.

12

(iii)   Awarding money damages as set forth in each cause of action for

Plaintiff's loss of reputation in an amount to be proven at trial.

(iv)    Awarding costs and attorneys' fees and such other relief as this Court

deems just and equitable.

Dated: New York, New York
May 15, 2007

LAW OFFICES OF DONALD WATNICK

By: _____
Donald E. Watnick (DW 6019)
292 Madison Avenue – 17th Floor
New York, New York 10017
(212) 213-6886
*Attorneys for Plaintiff*
Christian Augustin von Hassell *a/k/a*
*Agostino von Hassell*

**Of Counsel:**
Edward F. Maluf (EM 6884)
BINGHAM McCUTCHEN LLP
399 Park Avenue
New York, New York  10022
(212) 705-7000