Donald E. Watnick (DW 6019)
LAW OFFICES OF DONALD WATNICK
292 Madison Avenue, 17th Floor
New York, New York 10017
(212) 213-6886
*Attorneys for Plaintiff*
*Christian Augustin von Hassell*
*a/k/a Agostino von Hassell*

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------------------------------X
CHRISTIAN AUGUSTIN VON HASSELL a/k/a  :
AGOSTINO VON HASSELL,   :   07 Civ. 3477 (LAK)
:
Plaintiff,   :
  - against -   :
:   AFFIDAVIT
ALAIN SAINT-SAËNS and UNIVERSITY   :
PRESS OF THE SOUTH, INC.,   :
:
Defendants.   :
:
---------------------------------------------------------------- X

STATE OF NEW YORK         )
                          )
                          ) :.
                          )
COUNTY OF NEW YORK        )

ALEXANDER HOYT, being duly sworn, hereby states and attests as follows:

1. I am an independent literary agent, based in New York City, and am fully familiar with the facts set forth herein. I make this Affidavit in support of Plaintiff's application for an award of damages from defendants University Press of the South, Inc. ("UNPS") and Alain Saint-Saens ("Saint-Saens") with respect to Plaintiff's claims relating to his book, *Military High Life: Elegant Food, Histories and Recipes* (the "Book").

2. I have more than 30 years of experience in all facets of the publishing industry. I

was employed for 10 years at Doubleday & Co., where I held a number of positions, the last of which was as Director of Subsidiary Rights, where I was responsible for the licensing of published works. In this position, I worked to license books that had been published by Doubleday & Co. and acquired expertise about what books are readily licensed, the prices at which they can be licensed, and the likely volume of licensed books that then can be distributed.

3. In 1988, I started Alexander Hoyt Associates, an independent literary agency, which represents both publishers and authors, including major historians. I have been the New York representative of Quarto, a London based illustrated book packaging form and the agent for Reference Works, a book developer of illustrated and referenced books. Saint-Saens is the President of UNPS and he signed the Publishing Agreement.

4. I have substantial experience relating to the publication, marketing, promoting and sales of illustrated photo books, such as the Book, both as an agent and through my work for Doubleday.

5. In connection with the Book, I have reviewed the Publishing Agreement signed by plaintiff and defendant University Press of the South, Inc. I also have reviewed the Book.

6. In my opinion, the Book is not only well written and presented, but a very attractive publication with appeal to a number of audiences, including current and former military members, chefs and others in the food industry, and groups with an interest in military and historic issues. Mr. von Hassell's long-time presence in military affairs and as a writer on military history also makes this Book a very marketable publication. So, too, does the favorable and significant publicity that the Book has generated, including reviews and Mr. von Hassell's recent appearance on the Food Network for a broadcast about the Book.

7. Unique and well presented photo books, such *Military High Life*, also have a long shelf life at book stores because they remain timely for a long period of time.

8. I also understand that Mr. von Hassell has spent substantial sums of money, as well as devoted extensive time, to marketing and promoting the Book.

9. Based on these facts and circumstances, I believe that the initial printing of 5,000 copies of the Book would have sold relatively quickly, if marketed and promoted properly by a skilled and experienced publisher. This is particularly the case because of the relatively low price of the Book, $34.95 per copy, and the likely great interest in it by military, food and historical groups.

10. I also believe that, given the five-year term of the publishing agreement, it is very likely that there would have been subsequent printings of the Book, which would have likely resulted in additional sales, during the term of the publishing agreement, of an additional 10,000 copies of the Book, if not more. It is reasonable that interest in the Book would have presented the opportunity for additional editions of it, which have resulted in still more sales.

11. I understand from the Complaint that defendants represented to Mr. von Hassell that they believed he would earn, at a minimum, a $150,000 royalty from the Book.

12. I actually believe that there was a substantial likelihood that Mr. von Hassell would have earned closer to $200,000 in royalties from the Book. Assuming that distributors received a 25% discount off of the list price of the Book, the resulting royalties on the Book would have been approximately $26.20 per copy. As Mr. von Hassell was entitled to a 50% share of such royalty, his total royalty would have been $13.10 per copy, or $65,631 for each 5,000 copies sold.

13. Accordingly, presuming that 15,000 copies of the Book were sold, a very

reasonable and conservative projection as to sales, Mr. von Hassell would have received approximately $195,000 in royalties from the Book.

14. It also is very possible that the actual sales of the Book would have been greater and that the amount of royalties would have exceeded the amount set forth in paragraph 13.

_____
ALEXANDER HOYT

Sworn to this 1st
day of ~~March~~, 2008
April

_____
Notary Public

DONALD E WATNICK
Notary Public, State of New York
No. 02WA6149308
Qualified in New York County
Commission Expires July 10, 20 10