Donald E. Watnick (DW 6019)
LAW OFFICES OF DONALD WATNICK
292 Madison Avenue, 17th Floor
New York, New York 10017
(212) 213-6886
*Attorneys for Plaintiff*
*Christian Augustin von Hassell*
*a/k/a Agostino von Hassell*

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X
CHRISTIAN AUGUSTIN VON HASSELL a/k/a  :
AGOSTINO VON HASSELL,  :     07 Civ. 3477 (LAK)
  :
  :
Plaintiff,  :
- against -  :
  :     DECLARATION
ALAIN SAINT-SAËNS and UNIVERSITY  :
PRESS OF THE SOUTH, INC.,  :
  :
Defendants.  :
  :
------------------------------------------------------------X

     I, DONALD E. WATNICK, an attorney duly admitted to practice law in the State of New York and this Court, hereby declare, under the penalty of perjury under the laws of the United States of America, that the following statements are true and correct:

     1.     I am attorney of record in the above-entitled case for Plaintiff CHRISTIAN AUGUSTIN VON HASSELL a/k/a AGOSTINO VON HASSELL, and am fully familiar with the facts set forth herein. I make this Declaration in support of Plaintiff's application, pursuant to Fed. R. Civ. P. 55(b)(2) and Local Rule 55.2(b) of this Court, for an award of damages based upon the default of defendants Alain Saint-Saens ("Saint-Saens") and University Press of the South, Inc. ("UNPS").

     2.     I am attaching hereto as Exh. A a copies of two orders of the Court, dated September 5, 2007 and January 3, 2008, granting plaintiff's motions for a default judgment

against each of the defendants, and directing that an inquest be held to assess damages against defendants.

       3.     I am attaching hereto as Exh. B a copy of a Declaration that I previously filed with the Court, dated August 14, 2007, as to defendant UNPS' default.

       4.     I am attaching hereto as Exh. C. a copy of a Declaration that I previously filed with the Court, dated September 6, 2007, as to defendant Saint-Saens' default.

       5.     No prior application for the relief requested herein has been made.

       WHEREFORE, on behalf of Plaintiff CHRISTIAN AUGUSTIN VON HASSELL a/k/a AGOSTINO VON HASSELL, I respectfully request that this Court enter a Default Judgment against Defendants Alain Saint-Saens and University Press of the South, Inc., in accordance with the Affidavit of Plaintiff, Alexander Hoyt and Memorandum of Law that are being simultaneously submitted to the Court.

Executed On:  April 1, 2008

                                          Donald E. Watnick (DW 6019)

**EXHIBIT A** (to 4/1/08 WARWICK Dec.)

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
CHRISTIAN AUGUSTIN VAN HASSEL, etc.,

                    Plaintiff,

         -against-                                          07 Civ. 3477 (LAK)


ALAIN SAINT-SAËNS, et ano.,

                    Defendants.
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

### ORDER

LEWIS A. KAPLAN, *District Judge.*

           Plaintiff's motion for a default judgment against defendant Alain Sait-Saëns is
granted. The matter is referred to a magistrate judge for an inquest.

           SO ORDERED.

Dated:         January 3, 2008


                                            _____
                                                 Lewis A. Kaplan
                                            United States District Judge


USDS SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 1/4/08

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
CHRISTIAN AUGUSTIN VAN HASSEL, etc.,

                    Plaintiff,

          -against-                                                07 Civ. 3477 (LAK)

ALAIN SAINT-SAËNS, et ano.,

                    Defendants.
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

**ORDER**

LEWIS A. KAPLAN, *District Judge.*

          Plaintiff's motion for a default judgment against defendant University Press of the
South, Inc., is granted.  The matter is referred to a magistrate judge for an inquest, which may await
resolution of the action against the other defendant.

          SO ORDERED.

Dated:          September 5, 2007

                                                    _____
                                                    Lewis A. Kaplan
                                                    United States District Judge

USDS SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 9/6/07

Exhibit b   to  4/11/08  WATNICK Dec.

Donald E. Watnick (DW 6019)
LAW OFFICES OF DONALD WATNICK
292 Madison Avenue, 17th Floor
New York, New York 10017
(212) 213-6886
*Attorneys for Plaintiff*
*Christian Augustin von Hassell*
*a/k/a Agostino von Hassell*

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------X

CHRISTIAN AUGUSTIN VON HASSELL a/k/a
AGOSTINO VON HASSELL,

             Plaintiff,

    - against -

ALAIN SAINT-SAËNS and UNIVERSITY
PRESS OF THE SOUTH, INC.,

             Defendants.

------------------------------------------------------ X

07 Civ. 3477 (LAK)

DECLARATION

I, DONALD E. WATNICK, an attorney duly admitted to practice law in the State of New

York and this Court, hereby declare, under the penalty of perjury under the laws of the United

States of America, that the following statements are true and correct:

    1.     I am attorney of record in the above-entitled case for Plaintiff CHRISTIAN

AUGUSTIN VON HASSELL a/k/a AGOSTINO VON HASSELL, and am fully familiar with the

facts set forth herein. I make this Declaration in support of Plaintiff's application, pursuant to

Fed. R. Civ. P. 55(b)(2) and Local Rule 55.2(b) of this Court, for a default judgment against

defendant University Press of the South, Inc. ("UNPS") and a hearing in which to assess damages

against UNPS.

    2.     In this action, Plaintiff seeks damages and related relief against defendants Alain

Saint-Saens and UNPS arising from a a book publishing agreement (the "Publishing Agreement")

between Plaintiff, as author, and Defendants, as publisher, with respect to Plaintiff's book,

Military High Life: Elegant Food, Histories and Recipes (the "Book").  As set forth in Amended

Complaint, Defendants have failed to meet their contractual and other obligations to promote,

market and sell the Book, and have thereby caused Plaintiff damages in excess of $350,000, plus

additional damages for loss of reputation and attorneys' fees and costs.  (A copy of the Amended

Complaint herein, to which defendant UNPS has not responded, is annexed hereto as Exhibit A.)

      3.        Jurisdiction of the subject matter of this action is pursuant to 28 U.S.C. Section

1332(a) because Plaintiff and Defendants are domiciled in different states and the amount in

controversy exceeds $75,000.

      4.        This action was commenced on May 1, 2007 by the filing of the Summons and

Complaint.  Thereafter, pursuant to an order of this Court, Plaintiff filed an Amended Complaint

on May 30, 2007.

      5.        On July 5, 2007, the Summons and Amended Complaint were served upon

Defendant UNPS through the Secretary of State of the State of Louisiana.  (A copy of the

Affidavit of Service filed with this Court is annexed hereto as Exhibit B.)

      6.        Service was made upon Defendant UNPS through the Secretary of State in

accordance with Fed. R. Civ. P. 4(h) and Fed. R. Civ. 4(e), which provides for service pursuant to

the state laws where the District Court is located (New York) or where service is effected

(Louisiana).  Both Louisiana law (LSA-C.C.P. Art. 1262) and New York law (N.Y. BCL Section

306) provide for service of process on a corporation through the Secretary of State.

      7.        Fed. R. Civ. P. 12 provides that a defendant shall answer or move against a

Complaint within 20 days of its service.  Defendant UNPS has failed to appear or otherwise

defend this action, and more than 20 days have elapsed since the date of service of the Summons

and Amended Complaint upon Defendant UNPS.

8.      Defendant UNPS has never indicated any intention to appear and defend this

action. Defendant UNPS returned a request for waiver of service of process without opening the

package in which it was transmitted. My co-counsel and I have communicated repeatedly about

the Publishing Agreement with an attorney identified as counsel for Defendant UNPS, Nancy

Marshall of Deutsch, Kerrigan & Stiles, LLP, in New Orleans, La.; but, she has not stated to me

that she intended to appear and defend this action on behalf of Defendant UNPS, or requested

additional time in which to answer the complaint herein.

9.      Therefore, Plaintiff is entitled to a default judgment, pursuant to Fed. R. Civ. P.

55, which provides for a default judgment when a party aginst who judgment is sought "has failed

to plead or otherwise defend as provided by these rules."

10.     On August 13, 2007, pursuant to Fed. R. Civ. P. 55(a) and Local Rule 55.1 of this

Court, the Clerk of this Court entered a Certificate of Default, which accompanies this motion

(and the original of which is included in the courtesy copy provided to the Court). A copy of the

written application for the Certificate of Default, in accordance with Local Rule 55.1, presented to

the Clerk is annexed hereto as Exhibit C hereto.

11.     Defendant UNPS is a corporation organized under the laws of the State of

Louisiana. Therefore, it is not an infant, in the military or an incompetent person.

12.     Inasmuch as the amount of damages is not liquidated, in accordance with Fed. R.

Civ. P. 55(a)(2) and Local Rule 55.2, I request a hearing to assess the amount of damages

sustained by Plaintiff and other relief to be ordered.

13.     No prior application for the relief requested herein has been made.

WHEREFORE, on behalf of Plaintiff CHRISTIAN AUGUSTIN VON HASSELL a/k/a

AGOSTINO VON HASSELL, I respectfully request that this Court enter a Default Judgment against Defendant University Press of the South, Inc., and set an immediate hearing to determine damages and other relief against Defendant University Press of the South, Inc.

Executed On:  August 14 2007

_____
Donald E. Watnick (DW 6019)

Exhibit A to 8/16/07 Watnick Dec.

Donald E. Watnick (DW 6019)
LAW OFFICES OF DONALD WATNICK
292 Madison Avenue, 17th Floor
New York, New York 10017
(212) 213-6886

*Attorneys for Plaintiff*
Christian Augustin von Hassell
*a/k/a Agostino von Hassell*

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------X

CHRISTIAN AUGUSTIN VON HASSELL a/k/a :
AGOSTINO VON HASSELL,                          :
                                                                  :
                              Plaintiff,            :
                                                                  :
        - against -                                       :
                                                                  :
ALAIN SAINT-SAËNS and UNIVERSITY     :
PRESS OF THE SOUTH, INC.,                        :
                                                                  :
                              Defendants.       :
                                                                  :
------------------------------------------------------X

DOCKET

SENT TO CHAMBERS
FOR REVIEW

MAY 1 6 2008

U.S.D.O.S.D.N.Y.
CASHIERS

07 Civ. 3477 (LAK)

<u>FIRST AMENDED COMPLAINT</u>

<u>JURY TRIAL DEMANDED</u>

Plaintiff Christian Augustin von Hassell a/k/a Agostino von Hassell, by his undersigned

attorneys, Law Offices of Donald Watnick, for his Complaint against defendants Alain Saint-

Saëns and University Press of the South, Inc., hereby alleges and argues as follows:

<u>NATURE OF THE ACTION</u>

1.      This is an action for breach of contract, breach of the duty of good faith and fair

dealing, fraud and detrimental reliance in relation to a book publishing agreement between

Plaintiff Christian Augustin von Hassell a/k/a Agostino von Hassell ("von Hassell" or

"Plaintiff") as the author and Defendants Alain Saint-Saëns ("Saint-Saëns") and University Press

of the South, Inc. ("University Press") as publisher.

## PARTIES

2.      Plaintiff von Hassell is domiciled in and is a citizen of the Commonwealth of Virginia, as well as a resident of the State of New York, with a residence located in New York County, and a principal place of business located at 399 Park Avenue, New York, New York. At all times, Plaintiff von Hassell conducted and participated in all or substantially all of the transactions and communications described herein from his office in the State of New York.

3.      Defendant University Press is a corporation organized under the laws of the State of Louisiana with its principal place of business located at 5500 Prytania Street, PMB 421, New Orleans, Louisiana, and is a citizen of the State of Louisiana.

4.      Defendant Saint-Saëns, upon information and belief, is the President of University Press, and is domiciled in and is a citizen of the State of Louisiana.

## JURISDICTION AND VENUE

5.      This Court has jurisdiction over this matter based on diversity of citizenship, pursuant to 28 U.S.C. §1332(a) because the parties are citizens of different states and the amount in controversy exceeds $75,000.

6.      At all relevant times, Defendants have conducted business in the State of New York, including through one or more interactive web-sites and in connection with the transactions, facts and circumstances set forth herein.

7.      Venue is appropriate in this District pursuant to 28 U.S.C. §1391 because a substantial part of the events and omissions giving rise to the claims herein occurred in this District.

8.      Pursuant to Fed.R.Civ.P. 38(b), Plaintiff hereby demands a jury trial of the claims asserted herein.

## FACTS COMMON TO ALL ALLEGATIONS

**Plaintiff is an Established Author on Military History**

9.     In this action, Plaintiff seeks to recover more than $350,000 in damages arising from Defendants' failure to perform under a book publishing agreement and to keep legally binding promises, and fraudulently inducing Plaintiff to execute a publishing agreement with respect to Plaintiff's book, *Military High Life: Elegant Food, Histories and Recipes* (the "Book"). (A copy of the cover of the Book is annexed as Exhibit A hereto.)

10.     As described in a 2006 review in *The Wall Street Journal*, the Book is a "coffee-table volume" that is intended to be a tour of military kitchens and officers' messes over the years, and "includes 141 beautiful color illustrations and 73 interesting recipes." von Hassell, who was a captain in the U.S. Marine Corps, created and is the lead author of the Book.

11.     Plaintiff also has authored several other books about the U.S. Marine Corps and the U.S. military, including *Warriors. The United States Marine Corps, Strike Force: Marine Corps Special Operations; West Point: The Bicentennial Book;* and *In Honor of America.* He is most recently co-author of the historical volume *Alliance of Enemies. The Untold Story of the Secret American and German Collaboration to End World War II,* published by St. Martin's Press.

12.     To develop and produce the Book, including fees for design, photography, research, writing and editing, Plaintiff incurred costs of in or about $100,000. Plaintiff also devoted hours of his own time to developing and writing the Book.

**The Publishing Agreement Between the Parties**

13.     By agreement dated May 8, 2006, Plaintiff and University Press executed a Publishing Agreement, whereby Plaintiff granted University Press the exclusive world-wide

rights to publish and sell Plaintiff's book in the English language. The parties thereafter executed an Addendum to the Publishing Agreement. (A copy of the Publishing Agreement and Addendum thereto (collectively, the "Agreement") are annexed as Exhibit B hereto and fully incorporated herein.)

14.    The Agreement provides that University Press has "the sole and exclusive right to . . . print, publish and sell" the Book in the English language. The Agreement further states that University Press "has the exclusive, unlimited right to license or permit others to publish, reproduce or provide the work in whole or in part," and that these rights include all forms of publication.

15.    Under the Agreement, University Press agreed to market and promote the Book and work with Plaintiff in "an equitable manner" to distribute the Book.

16.    The Agreement imposed start-up costs on Plaintiff for the publication and promotion of the Book. Plaintiff agreed to pay to University Press $500, upon signing the Agreement, $2,000 for the costs of publication, and to pay all costs of printing of the Book.

17.    In executing the Agreement, University Press agreed to pay Plaintiff royalties equal to 50% of the net cash receipts from the sale of the Book.

18.    University Press also agreed to "provide in a timely manner sales reports to the [Plaintiff]," which sales reports were to be sent every two months and contain all relevant sales information, and to allow Plaintiff or "his representative to inspect sales records" for the Book.

19.    The Agreement stated that it would terminate five years after the publication date if the Book was out of print and the publisher did not re-print it after a written demand by Plaintiff.

20.    Finally, the Agreement, which contained no choice-of-forum clause, is governed

4

by Louisiana law.

**Defendants' False Representations to the Plaintiff**

21.    Prior to Plaintiff's execution of the Agreement, University Press and Saint-Saëns falsely represented to Plaintiff that University Press was a full service publisher and book distributor, with the sales infrastructure and personnel to market, promote, sell and distribute books and a strong sales record on behalf of other authors. Defendants falsely represented the existence of, and Plaintiff relied on the existence of, University Press having a fully functioning on-line, web-based sales system, telephone systems to sell the Book and facilities and personnel to store and ship substantial inventory of the Book.

22.    Defendants also falsely represented to Plaintiff that, if he signed a publishing agreement with University Press, Defendants would utilize their affiliate and partner publishing house Presse Universitaire du Nouveau Monde in Europe to sell the Book.

23.    In addition, Defendants falsely represented that, if Plaintiff signed a publishing agreement with University Press, Defendants would have a full distribution plan in place, complete with advertising and promotional articles. Defendants also falsely represented that they had extensive experience is developing and implementing such promotional plans.

24.    Defendants falsely stated that such advertising and promotional plan would include listing the Book on "Amazon.com" and other web-sites, and that placing the Book with distributors and into book stores would be easy and a matter of course, in light of their alleged experience.

25.    Moreover, Defendants represented to Plaintiff that the Book would generate at least $150,000 in royalties to Plaintiff.

26.    After the Agreement was fully executed between Plaintiff and University Press,

5

Defendants continued to falsely represent and promise to Plaintiff that they were using and would use their best efforts to sell, market and promote the Book and that they were capable of and experienced in doing so.

27.    By virtue of its exclusive rights to sell, market, promote and distribute the Book over, at a minimum, a five year period, University Press had a duty to use its best efforts to perform its obligations under the Agreement.

## Plaintiff Has Fully Performed Under the Agreement

28.    Plaintiff has fully performed the Agreement, including paying to University Press a total of $2,500, and delivering to University Press 5,000 copies of the Book after University Press approved the manuscript.

29.    Plaintiff paid approximately $42,000 to print 6,000 copies of the Book, including the 5,000 copies delivered to University Press. Plaintiff paid an additional approximately $4,500 to ship copies of the Book to University Press.

30.    Plaintiff also has incurred more than $34,000 in costs associated with printing, developing, distributing, marketing and promoting the Book, as well as devoting extensive amounts of his own time to marketing and promoting the Book.

## Defendants Have Failed to Perform Under the Agreement and Have Otherwise Acted Improperly

31.    University Press has failed to perform any of its obligations under the Agreement, including without limitation failing to promote, market, sell or distribute the Book, failing to work with Plaintiff to promote, market and sell the Book and failing to comply with its obligations to provide royalty reports and sales information to Plaintiff.

32.    In particular, Defendants have failed to comply with their obligations to make

efforts, such as book online to distributors or to book-stores. Instead of promoting and marketing the Book to maximize sales, Defendants have undercut the Book by not coordinating with Plaintiff or promotional efforts, disregarding sales leads, issuing promotional material that was incomplete, illiterate or inaccurate and not timely shipping the Book.

33.     Potential distributors and purchasers of the Book, including book stores and universities, who have attempted to communicate with Defendants to order the Book, have been unable to do so because University Press did not have fully functioning telephone lines or a web-based sales system, or have found that Defendants did not respond to their communications

34.     In further violation of the Agreement, University Press failed to pay royalties, and failed to issue royalty reports as provided for in the Agreement.  University Press also refused to allow Plaintiff to inspect sales records for the Book, even though the Agreement entitled Plaintiff to inspect such records.

35.     Upon information and belief, Defendants' actions in breach of the Agreement and their promises to Plaintiff have been purposeful and wilful.  Defendants have refused to communicate with Plaintiff directly, informed Plaintiff's representatives that Defendants will not read any emails sent by Plaintiff and, upon information and belief, deleted emails from Plaintiff about selling and promoting the Book, and have refused to engage in any sales, marketing or promotional activities for the Book.

36.     Moreover, when Plaintiff demanded that University Press fulfill its obligations under the Agreement, Defendants then insisted that Plaintiff first pay to Defendants as much as an additional $30,000 before they would comply with their binding and pre-existing obligations.

37.     As a result of University Press' breaches of the Agreement, and Defendants fraudulent misrepresentations and failure to abide by its binding promises and commitments,

7

Plaintiff has been damaged in an amount to be determined at trial, but in no event less than $200,000. Defendants' wrongful actions have caused further damage to Plaintiff because he has lost hundreds of thousands of dollars in profits that he would have made on the Book, his reputation as an author has been damaged, and he has been forced to incur substantial costs, including attorneys' fees. The amounts of these foregoing damages are no less than $350,000, and will be proven at trial.

## FIRST CAUSE OF ACTION
### (Breach of Contract against Defendant University Press)

38.     Plaintiff repeats and realleges the allegations contained in paragraphs 1 to 37 with the same force and effect as if fully set forth and incorporated herein.

39.     As set forth herein, the Agreement was a valid and enforceable agreement between Plaintiff and University Press, which obligated University Press, *inter alia*, to sell, promote, market and distribute the Book, pay royalties to Plaintiff for sales of the Book, and provide to Plaintiff royalty reports and information about sales of the Book.

40.     At all times, Plaintiff fully performed the Agreement.

41.     University Press unlawfully breached the Agreement by failing and refusing to sell, promote, market and distribute Book, failing and refusing to pay royalties to Plaintiff for sales of the Book, failing and refusing to provide to Plaintiff royalty reports or sales information for the Book, and engaging in other conduct that unlawfully violated the Agreement.

42.     As a direct result of University Press' foregoing breaches, Plaintiff has been damaged in an amount to be determined at trial but equal to at least $200,000, plus lost profits for the Book in an amount to be determined at trial but equal to at least $150,000, damage to his reputation as an author, interest and costs, including attorneys' fees.

8

## SECOND CAUSE OF ACTION
### (Breach of Duty of Good Faith and Fair Dealing against Defendant University Press)

43.     Plaintiff repeats and realleges the allegations contained in paragraphs 1 to 42 with the same force and effect as if fully set forth and incorporated herein.

44.     As a matter of law, including without limitation under La. Civil Code Section 1983, and by virtue of having exclusive rights to sell, promote, market and distribute the Book, the Agreement imposed upon University Press a duty of good faith and fair dealing, including without limitation a duty to use best efforts to fulfill the terms and conditions of the Agreement, and not engage in deceptive and dishonest acts.

45.     By failing and refusing to undertake appropriate efforts to sell, market, promote and distribute the Book, and then insisting that it would not do so unless Plaintiff paid University Press as much as $30,000 in excess of what it was due under the Agreement, University Press unlawfully breached its duty of good faith and fair dealing.

46.     University Press further unlawfully breached its duty of good faith and fair dealing by engaging in deceptive and dishonest acts, including refusing to communicate with Plaintiff and his representatives and making false and inaccurate statements about its efforts to sell, market, promote and distribute the Book.

47.     As a direct result of University Press' foregoing breaches, Plaintiff has been damaged in an amount to be determined at trial but equal to at least $200,000, plus lost profits for the Book in an amount to be determined at trial but equal to at least $150,000, damage to his reputation as an author, interest and costs, including attorneys' fees.

## THIRD CAUSE OF ACTION
### (Fraud against both Defendants)

48.     Plaintiff repeats and realleges the allegations contained in paragraphs 1 to 47 with

49.    In inducing plaintiff to execute the Agreement, Defendants represented that University Press was a full service publisher and book distributor, with the sales infrastructure and personnel to distribute books and a strong sales record on behalf of other authors.

50.    Defendants further represented that University Press' sales infrastructure included a fully functional on-line web-based sales system, both the telephone systems and personnel to sell and promote the Book, place and accept orders for the Book and distribute the Book, a facility from which inventory of the Book could be stored and distributed and European affiliates to sell and promote the Book.

51.    Defendants also represented that they would put in place a promotional plan for the Book and that they had the experience and track-record to readily develop and implement such a plan.

52.    Each of these representations by Defendants was material.

53.    Each of these representations by Defendants was false and misleading at the time that they were made.

54.    Defendants knowingly or recklessly made each of these representations with full knowledge that each of them was materially false and misleading when made to Plaintiff.

55.    Defendants made these false and misleading representations for the purpose of inducing Plaintiff to execute the Agreement and engage in business dealings with Defendants with respect to the Book.

56.    Plaintiff reasonably relied upon Defendants' false and misleading representations, in executing the Agreement and engaging in business dealings with Defendants, and would not have otherwise executed the Agreement and engaged in business dealings with Defendants.

10

57.    As a direct and proximate result of Defendants' false and misleading representations, Plaintiff has sustained damages in an amount to be proven at trial but equal to at least $200,000, plus lost profits for the Book in an amount equal to at least $150,000, damage to his reputation as an author, interest and costs, including attorneys' fees.

## FOURTH CAUSE OF ACTION
### (Detrimental Reliance against both Defendants)

58.    Plaintiff repeats and realleges the allegations contained in paragraphs 1 to 57 with the same force and effect as if fully set forth and incorporated herein.

59.    In inducing Plaintiff to execute the Agreement, Defendants represented that University Press was a full service publisher and book distributor, with the sales infrastructure and personnel to distribute books and a strong sales record on behalf of other authors.

60.    Defendants further represented that University Press' sales infrastructure included a fully functional on-line web-based sales system, both the telephone systems and personnel to sell and promote the Book, place and accept orders for the Book and distribute the Book, a facility from which inventory of the Book could be stored and distributed and European affiliates to sell and promote the Book.

61.    Defendants also represented that they would put in place a promotional plan for the Book and that they had the experience and track-record to readily develop and implement such a plan.

62.    Each of these representations by Defendants was material.

63.    Each of these representations by Defendants was false and misleading at the time that they were made.

64.    Defendants knowingly or recklessly made each of these representations with full

11

knowledge that each of them was materially false and misleading when made to Plaintiff.

65.     Defendants made these false and misleading representations for the purpose of inducing Plaintiff to execute the Agreement and engage in business dealings with Defendants with respect to the Book.

66.     Plaintiff reasonably relied to his own detriment upon Defendants' false and misleading representations, in executing the Agreement and engaging in business dealings with Defendants, and would not have otherwise executed the Agreement and engaged in business dealings with Defendants.

67.     As a direct and proximate result of Defendants' false and misleading representations, upon which Plaintiff reasonably relied to his own detriment, Plaintiff has sustained damages in an amount to be proven at trial but equal to at least $200,000, plus lost profits for the Book in an amount equal to at least $150,000, damage to his reputation as an author, interest and costs, including attorneys' fees.

WHEREFORE, plaintiff Christian Augustin von Hassell a.k/a Agostino von Hassel respectfully requests judgment against defendants Alain Saint-Saens and University Press of the South, Inc. as follows:

> i)      Awarding money damages as set forth in each cause of action to compensate Plaintiff's losses in an amount to be proven at trial, but in no event less than $200,000.
>
> ii)     Awarding money damages as set forth in each cause of action for Plaintiff's lost profits in an amount to be proven at trial but in no event less than $150,000.

(iii)    Awarding money damages as set forth in each cause of action for

Plaintiff's loss of reputation in an amount to be proven at trial.

(iv)    Awarding costs and attorneys' fees and such other relief as this Court

deems just and equitable.

Dated: New York, New York
       May 15, 2007

LAW OFFICES OF DONALD WATNICK

By: _____
          Donald E. Watnick (DW 6019)
          292 Madison Avenue – 17th Floor
          New York, New York 10017
          (212) 213-6886
          *Attorneys for Plaintiff*
          Christian Augustin von Hassell *a/k/a*
          *Agostino von Hassell*

**Of Counsel:**
Edward F. Maluf (EM 6884)
BINGHAM McCUTCHEN LLP
399 Park Avenue
New York, New York  10022
(212) 705-7000

13

EXHIBIT A



# MILITARY HIGH LIFE
## ELEGANT FOOD HISTORIES AND RECIPES

Created by Agostino von Hassell

Herm Dillon & Leslie Jean-Bart

Introduction by John Besh

UNIVERSITY PRESS OF THE SOUTH

# University Press of the South

## PUBLISHING AGREEMENT

Made this day of May 8, 2006
By and between  Mr. Agostino von Hassel,
The Repton Group LLC, 26th Floor, New York, NY 10022
hereinafter referred to as the "author" (in the case of multiple authorship the word "author" is used collectively) and
UNIVERSITY PRESS OF THE SOUTH, Inc.
5500, Prytania Steet, PME-421
New Orleans, LA 70115  USA

hereinafter referred to as the "publisher."
The parties do agree as follows:

**I) Subject of the Publishing Agreement**
1.1  The Subject of the Publishing Agreement is a work written by the author with the following title:

### Military High Life. Elegant Food Histories and Recipes.

hereinafter referred to as the "work." In the event either the publisher or the author wishes to retitle the work after this Publishing Agreement is
signed, the new title shall be selected by consultation by the two parties.
1.2  The work shall appear in the Series:          **Cooking Culture Series.**

In the event the work is assigned to a different series after this Publishing Agreement is signed, the new series shall be selected by consultation
by the two parties.

**II) Rights to the Work**
2.1  The author represents and warrants that he or she is the sole author and sole proprietor of all rights in and to the work; that the work is
original and is not in the public domain; that it has not previously been published; that it does not violate or infringe any copyright, whether law
or statutory, and contains nothing libelous or otherwise contrary to law; and that he or she has full power to enter into this Publishing
Agreement.
2.2  The author shall indemnify and hold harmless the publisher and those to whom the publisher may license or grant rights hereunder and any
seller of the work against any and all loses, damages, liability, and expenses, including attorney's fees, that the publisher may incur in the event
any suit, claim, demand, action or proceeding is asserted or instituted against the work, the publisher, a licensee or grantee of the publisher or
any seller of the work. If any suit, claim, demand, action, or proceeding is instituted, the publisher shall  promptly notify the author, who shall
fully cooperate in the defense thereof. The publisher may withhold payments of any and all royalties that might otherwise be due to the author
under this or any other agreement between the parties until such time as the suit, claim, demand, action or proceeding is settled, withdrawn or
finally resolved. The publisher shall have the right to select counsel in all such suits, claims, demands, actions or proceedings.
2.3  The author hereby grants and assigns to the publisher the following rights in and to the work during the full terms of copyright and all
renewals and extensions thereof, under the present or future laws of the United States, all other countries throughout the world and all
international copyright conventions:
- The sole and exclusive right to: a) print, publish and sell the work or cause the same to be printed, published and sold in book form in English
throughout the world; and b) all subsidiary rights to the work or any part thereof now existing or hereafter invented or created and the right to
grant these rights to third parties, in English throughout the world without limitation.
The author specifically authorizes the publisher to copyright throughout the world in the name of the publisher the work or any revision or other
edition thereof in English. The publisher shall have the right to renew such copyrights if the publisher deems it advisable. However, the actual
copyright shall be held by Agostino von Hassell and this shall so be reflected on the copyright page.
2.4  The publisher has the exclusive, unlimited right to license or to permit others to publish, reproduce or provide the work in whole or in part
and in any and all forms, formats, systems and materials. These rights shall include book club, paperback, translation, abridgment, adaptation,
foreign editions, selections, motion picture, film, television, broadcasting, audio and video reproducing and recording systems, microfilm, large-
type editions, Braille, and computer systems now known or hereafter invented.
2.5  The rights detailed in 2.4 shall be subject to the same royalty sharing agreement as spelled out in Section VIII.

**III) Permissions**
If the author incorporates in the work any illustrative or copyrighted material, he or she shall procure, at his or her own expense, written
permission to reprint the illustrations or copyrighted material in all editions of the work and for all uses of the work covered by this agreement.
The author shall deliver such permissions to the publisher at the time of delivery of the final manuscript.

# PUBLISHING AGREEMENT

**IV) The Manuscript and Publication**

4.1  On or before July 1st, 2006, the final manuscript of the work shall be delivered to the publisher either ready for reproduction by photo-offset ("camera-ready") or copy-edited and ready to be typeset, together with any permissions required pursuant to Clause III. The method of composition shall be agreed upon by the parties and shall be inserted in Clause 5.1 below. Publisher and author shall make every attempt to complete the pre-production of this work to allow shipment to the printer as early as possible to meet the fall 2006 holiday selling season. Publisher is aware that the work is at this time essentially camera ready yet still subject to revisions as required by the publisher.

If the author does not submit the manuscript by the above date, the author must ask the publisher for an extension to a date which shall be agreed upon by the parties. If the author does not submit the manuscript by the new date, the publisher may at its discretion grant the author a second extension or terminate this agreement by giving written notice, whereupon the author shall repay forthwith any and all monies advanced by the publisher. In the event the agreement is terminated, the publisher shall not be obligated to return to the author any monies paid to the publisher upon the signing of the agreement.

The author further agrees to supply promptly, at his or her own expense, all photographs, drawings, charts, indexes, or other material mutually agreed upon as necessary to the completion of the manuscript. If the author fails to do so, the publisher shall have the right to supply such material and charge the cost to the author.

4.2  In the event the author delivers the manuscript to the publisher by mail, the author shall send the manuscript by registered or certified mail or use a form of delivery which will ensure receipt by the publisher.

4.3  The author shall retain a duplicate copy of the manuscript which is delivered to the publisher.

4.4  The final manuscript shall be subject to approval by the publisher. If the manuscript is unacceptable, the author shall make revisions as requested by the publisher. In the event the revised manuscript is unacceptable, the publisher may terminate this Publishing Agreement by giving written notice, whereupon, the author shall repay forthwith any and all monies advanced by the publisher and may then submit the work to others.

It is understood and agreed that no duty shall devolve upon the publisher under this agreement until such time as the manuscript has been completed and edited to the satisfaction of the publisher. In no event shall the publisher be obligated to publish a work which in the judgment of its attorneys may lead to legal liability. In the event the author fails to make the work publishable within forty-five (45) days after notice from the publisher, the author shall repay forthwith all monies advanced by the publisher and the agreement shall be deemed terminated. In the event the agreement is terminated pursuant to this clause, the publisher shall not be obligated to return to the author any monies paid to the publisher upon signing.

4.5  The publisher shall arrange for copies of the work to be ready not later than six months after the author delivers the final manuscript. Any change in the date specified in Clause 4.1 for delivery of the final manuscript by the author shall delay the publication date. The publisher shall not be responsible for unforeseen delays resulting from strikes, Acts of God or other causes beyond its control or from the author's failure to deliver the final manuscript within the period of time mutually agreed upon.

**V) Production**

5.1  Method of composition:  **Camera-ready**

5.2  If the author agrees to deliver a camera-ready manuscript, the technical quality and accuracy of the final manuscript shall conform to the guidelines supplied by the publisher. If the camera-ready manuscript delivered by the author contains typographical or formal errors, the publisher shall return the manuscript to the author who shall make the necessary corrections at his or her own expense and return the manuscript to the publisher by a date mutually agreed upon.

5.3  If Clause 5. 1 provides that the publisher will compose the manuscript, the author agrees to read and correct the proofs of the work and return them to the publisher within a period of time mutually agreed upon. Any author's alterations shall be charged to the author.

5.4  If the work contains illustrations or other artwork, the author shall pay for and deliver promptly any screened film or color separations, along with camera-ready mechanicals for positioning within the work. If the author fails to supply the artwork promptly or in the necessary form, the publisher shall have the right to supply it and charge the cost to the author.

5.5  If the final manuscript is camera-ready, the publisher shall begin directly to prepare the manuscript for printing. If the manuscript is to be composed by the publisher, the author and the publisher shall agree to the financial arrangements for composition before the publisher begins to prepare the manuscript for printing.

5.6  The publisher and the author agree that the manuscript will be printed in Hong-Kong and the cost of printing be covered by the author.

Printed copies will be shipped by the printer to the publisher at author's cost.

5.7  When the work is first printed, the following free copies shall be made available by the publisher:

- 130 copies for the author.

5.7  The author may purchase additional copies of the work for personal use at the actual shipping and handling costs of the of the publisher. Such copies shall not be for resale unless expressly provided in this Publishing Agreement.

5.8  The work shall be sold at a price which shall be determined by the publisher.

5.10  The author shall receive 25 copies of any subsequent printings.

**VI) Promotion**

The publisher shall promote the work in the style and manner which in its sole judgment is best suited to its sale. The publisher and any licensees or assigns of the publisher shall have the right to use the name, image, likeness and biography of the author in advertising and publicity. Publisher recognizes that the author will underwrite promotion activities as agreed upon jointly between the publisher and the author. Publisher shall work with the author in an equitable manner international distribution of the work abroad and in the English edition.

# PUBLISHING AGREEMENT

## VII) Revised Editions

The publisher, after consultation with the author, shall have the sole discretion to decide that a revision of the work is desirable. At the publisher's request, the author agrees to deliver final copy for a revised edition satisfactory to the publisher in content and form by a date which shall be mutually agreed upon by the parties. If the author is unable to undertake the revision or is deceased, the publisher may arrange for the preparation of a revised edition. The compensation paid to the reviser (s) shall be charged against any sums accruing to the author on the sale of the revised edition. The publisher shall have the sole discretion to use the name of the author and/or reviser (s) on any revised edition of the work.

## VIII) Royalties

10. 1 The author shall receive royalties on copies of the work sold by the publisher.

10. 2 The publisher shall pay a royalty of fifty percent (50%) of its net cash receipts from its sale of the work beginning with copy 1. Royalties shall be paid bi-annually in the third week of February and the third week of July for the prior six month sales period. In order to receive royalties, the author agrees to notify the publisher of any change of address.

10. 3 For copies of the work sold outside the United States through distributors, the publisher shall pay the author a royalty of fifty percent (50%) based on the amount credited to the publisher as a result of the sale.

10. 4 For all other copies of the work sold outside the United States and/or sold at discounts from the publisher's stated list price of more than fifty percent (50%), the author shall be paid a royalty of fifty percent (50%) of the net cash received.

10. 5 Royalties shall not be paid on sales made to the author, or on copies used for promotional purposes.

10. 6 The author shall be paid by check in U.S. dollars, unless otherwise specified in this Publishing Agreement.

10. 7 Publisher shall, upon request, allow the author or his representative to inspect sales records.

10.8. Publisher shall provide in a timely manner sales reports to the author. Such reports shall be prepared and sent ever two months and shall detail all relevant sales information (sales, returns etc.).

## IX) Subsidiary Rights

11. 1 The publisher and the author shall share the exclusive right to all subsidiary rights to the work now existing or hereafter invented or created. The publisher alone may make arrangements with respect to these rights both on its own behalf and on behalf of the author. The net receipts from the sale or other disposition of subsidiary rights shall be divided equally between the publisher and the author.

## X) Overstock Copies

If after four (4) years after publication date a substantial number of unsold copies remain in stock, the publisher shall have the right to clear its inventory of the work. The publisher shall notify the author and the author shall have the right to buy copies at a reduced price which shall be negotiated.

## XI) Termination

If after five (5) years after publication date the work is out of print and within nine (9) months after written demand by the author the publisher does not bring out a new printing, this Publishing Agreement shall terminate. The publisher shall continue to share in the proceeds from the sale or other disposition of any subsidiary rights which have already been granted. The work shall be considered in print if it is on sale by the publisher or under license granted by the publisher, or if any contract or option for its publication, granted by the publisher, is outstanding.

## XII) Parties Bound

This Publishing Agreement shall be binding upon the heirs, executors, administrators and assigns of the author and upon the successors and assigns of the publisher.

## XIII) Applicable Law

This Publishing Agreement shall be governed by and interpreted in accordance with the laws of the State of Louisiana regardless of the place of its execution.

In witness whereof the parties hereto have executed this Publishing Agreement as of the day, month and year first above written.

**University Press of the South, Inc.**

Dr. ALAIN SAINT-SAËNS

Dr. AGOSTINO VON HASSELL

_____
Author

_____
Publisher

# ADDENDUM
## TO THE PUBLISHING AGREEMENT

**I) Contractual Fees**
A check in the amount of five hundred dollars ($500.00), payable to University Press of the South, Inc. and non-refundable shall be delivered to the publisher with the signed copy of this Publishing Agreement.

**II) Author's Contribution to the Cost of Publication**
2.1 The author shall contribute the sum of two thousand dollars ($2,000.00), in ONE non-refundable payment, when paying the contractual fees.
2.2 The author shall pay for the cost of printing of the first edition and any other printings. If the first printing of the work is sold out within two years after publication date, the author shall produce a second printing at its own expense. Any printings after the second printing shall be produced at the sole discretion of the publisher.
2.3. If the author asks the publisher to prepare the manuscript camera-ready, he shall contribute the sum of fifteen hundred dollars ($1,500.00) in one non-refundable payment, along with a photocopy of the manuscript and a PC compatible diskette of the manuscript.

**III) Parties Bound**
This Addendum to the Publishing Agreement shall be binding upon the heirs, executors, administrators and assigns of the author and upon the successors and assigns of the publisher.

**IV) Applicable Law**
This Addendum to the Publishing Agreement shall be governed by and interpreted in accordance with the laws of the State of Louisiana regardless of the place of its execution.
In witness whereof the parties hereto have executed this Addendum to the Publishing Agreement as of the day, month and year indicated in the Publishing Agreement.

University Press of the South, Inc.

Dr. ALAIN SAINT-SAËNS

Dr. AGOSTINO VON HASSELL

Author

Publisher

Exhibit B to 8/16/07 Watnick Dec.

**Donald Watnick**

| | |
|---|---|
| **From:** | NYSD_ECF_Pool@nysd.uscourts.gov |
| **Sent:** | Monday, July 30, 2007 3:51 PM |
| **To:** | deadmail@nysd.uscourts.gov |
| **Subject:** | Activity in Case 1:07-cv-03477-LAK Von Hassel v. Saint-Saens Affidavit of Service Complaints |

This is an automatic e-mail message generated by the CM/ECF system. Please DO NOT RESPOND to this e-mail because the mail box is unattended.
***NOTE TO PUBLIC ACCESS USERS*** You may view the filed documents once without charge. To avoid later charges, download a copy of each document during this first viewing.

## U.S. District Court

## United States District Court for the Southern District of New York

### Notice of Electronic Filing

The following transaction was entered by Watnick, Donald on 7/30/2007 at 3:51 PM EDT and filed on 7/30/2007

**Case Name:**        Von Hassel v. Saint-Saens
**Case Number:**     1:07-cv-3477
**Filer:**                Christian Augustin Von Hassel
**Document Number:** 5

**Docket Text:**
AFFIDAVIT OF SERVICE of Summons and Amended Complaint,. University Press of the South, Inc. served on 7/5/2007, answer due 7/25/2007. Service was accepted by Tara Zeprowski, State of La., Sec. of State. Document filed by Christian Augustin Von Hassel. (Watnick, Donald)

**1:07-cv-3477 Notice has been electronically mailed to:**

Donald E. Watnick     dwatnick@watnicklaw.com

**1:07-cv-3477 Notice has been delivered by other means to:**

The following document(s) are associated with this transaction:

**Document description:** Main Document
**Original filename:** n/a
**Electronic document Stamp:**
[STAMP dcecfStamp_ID=1008691343 [Date=7/30/2007] [FileNumber=3632857-0
] [067aecbc26db8f526307376207b5fcf4ce07e60f11ca5a64926e8a858bb4867f6aa
811c1d682f8d780bfae0f0c73d77e8b0b5ab305f9d47e23e5bcad3099fe66]]

SAVIANO PC | savvy]        212-532-7651

AO 440 (Rev. 10/93) Summons in a Civil Action - SDNY WEB 4/99

# United States District Court

JUDGE KAPLAN

SOUTHERN                    DISTRICT OF                    NEW YORK

CHRISTIAN AUGUSTIN VON HASSELL a/k/a
AGOSTINO VON HASSELL,

V.

ALAIN SAINT-SAËNS and UNIVERSITY
PRESS OF THE SOUTH, INC.

## SUMMONS IN A CIVIL CASE

CASE NUMBER:

**07 CV 3477**

TO: (Name and address of defendant)

University Press of the South, Inc.
5500 Prytania Street, PMB 421
New Orleans, Louisiana

Alain Saint-Saëns

YOU ARE HEREBY SUMMONED and required to serve upon PLAINTIFF'S ATTORNEY (name and address)

Donald E. Watnick
LAW OFFICES OF DONALD WATNICK
292 Madison Avenue, 17th Floor
New York, NY 10017
(212) 213-6886

an answer to the complaint which is herewith served upon you, within _____ days after service of this
summons upon you, exclusive of the day of service. If you fail to do so, judgment by default will be taken against you for
the relief demanded in the complaint. You must also file your answer with the Clerk of this Court within a reasonable period
of time after service.

J. MICHAEL McMAHON

_____            MAY 0 1 2007
CLERK                                _____
                                     DATE

_____
(BY) DEPUTY CLERK

212-532-7651

AO 440 (Rev. 10/93) Summons in a Civil Action -SDNY WEB 4/99

## RETURN OF SERVICE

| Service of the Summons and Complaint was made by me[1] | DATE 7-5-07 |
|---|---|
| NAME OF SERVER (PRINT) Steven C. Frewell | TITLE Process Server |

*Check one box below to indicate appropriate method of service*

☐ Served personally upon the defendant. Place where served: _____

☐ Left copies thereof at the defendant's dwelling house or usual place of abode with a person of suitable age and discretion then residing therein.
Name of person with whom the summons and complaint were left: _____

☐ Returned unexecuted: _____

☑ Other (specify): Served University Press of the South Inc and Alain Saint Saens
through the Louisiana Secretary of State, 8549 United Plaza Blvd Baton Rouge
Louisiana 70809 — Tara Zipprich, commercial compliance specialist accepted
service

## STATEMENT OF SERVICE FEES

| TRAVEL | SERVICES | TOTAL |
|---|---|---|
| | | |

## DECLARATION OF SERVER

I declare under penalty of perjury under the laws of the United States of America that the foregoing information contained in the Return of Service and Statement of Service Fees is true and correct.

Executed on  7-5-07 / 3:45 pm
_____ Date

_____
Signature of Server

BOMBET, CASHIO & ASSOCIATES
11220 North Harrell's Ferry Road
_____ BATON ROUGE, LOUISIANA 70816-0901
Address of Server    (225) 275-0796 FAX (225) 272-3631

(1)    As to who may serve a summons see Rule 4 of the Federal Rules of Civil Procedure.

Exhibit C to 8/16/07 Watnick Dec.

Donald E. Watnick (DW 6019)
LAW OFFICES OF DONALD WATNICK
292 Madison Avenue, 17th Floor
New York, New York 10017
(212) 213-6886
*Attorneys for Plaintiff*
*Christian Augustin von Hassell*
*a/k/a Agostino von Hassell*

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------X

CHRISTIAN AUGUSTIN VON HASSELL a/k/a
AGOSTINO VON HASSELL,

               Plaintiff,

   - against -

ALAIN SAINT-SAËNS and UNIVERSITY
PRESS OF THE SOUTH, INC.,

          Defendants.

------------------------------------------------------X

07 Civ.3477 (LAK)

**APPLICATION FOR A**
**CERTIFICATE OF DEFAULT**

     PLEASE TAKE NOTICE that, upon the annexed Declaration of Donald E. Watnick,

Esq., and the exhibits annexed thereto, and the prior proceedings in this case, Plaintiff

CHRISTIAN AUGUSTIN VON HASSELL a/k/a AGOSTINO VON HASSELL, hereby applies

to the Clerk of this Court, pursuant to Fed. R. Civ. P. 55 and Local Rule 55.1 of this Court, for a

Certificate of Default with respect to Defendant University Press of the South, Inc.

Dated: New York, New York
        August 13, 2007

                                    LAW OFFICES OF DONALD WATNICK

                                    By: _____
                                        Donald E. Watnick (DW 6019)
                                        292 Madison Avenue – 17th Floor
                                        New York, New York 10017
                                        (212) 213-6886
                                        *Attorneys for Plaintiff*
                                        *Christian Augustin von Hassell a/k/a Agostino*
                                        *von Hassell*

2

Donald E. Watnick (DW 6019)
LAW OFFICES OF DONALD WATNICK
292 Madison Avenue, 17th Floor
New York, New York 10017
(212) 213-6886
*Attorneys for Plaintiff*
*Christian Augustin von Hassell*
*a/k/a Agostino von Hassell*

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------X
CHRISTIAN AUGUSTIN VON HASSELL a/k/a      :
AGOSTINO VON HASSELL,                               :
                                                                          :
                                                                          :      07 Civ.3477 (LAK)
                          Plaintiff,                              :
         - against -                                          :
                                                                          :
ALAIN SAINT-SAËNS and UNIVERSITY         :      DECLARATION
PRESS OF THE SOUTH, INC.,                         :
                                                                          :
                                                                          :
                          Defendants.                       :
                                                                          :
------------------------------------------------------X

        I, DONALD E. WATNICK, an attorney duly admitted to practice law in the State of New
York and this Court, hereby declare, under the penalty of perjury under the laws of the United
States of America, that the following statements are true and correct:

        1.      I am attorney of record in the above-entitled case for Plaintiff CHRISTIAN
AUGUSTIN VON HASSELL a/k/a AGOSTINO VON HASSELL, and am fully familiar with the
facts set forth herein. I make this Declaration in support of Plaintiff's application for a Certificate
of Default by the Clerk with respect to Defendant University Press of the South, Inc., pursuant to
Fed. R. Civ. P. 55 and Local Rule 55.1 of this Court.

        2.      Defendant UNPS is a corporation organized under the laws of the State of
Louisiana. Therefore, it is not an infant, in the military or an incompetent person.

        3.      On July 5, 2007, the summons and complaint was served upon Defendant UNPS

through the Secretary of State of the State of Louisiana. (A copy of the Affidavit of Service filed with this Court is annexed hereto as Exhibit A.)

4.    Service was made upon Defendant UNPS through the Secretary of State in accordance with Fed. R. Civ. P. 4(h)(1) and Fed. R. Civ. 4(e)(1), which provides for service pursuant to the state laws where the District Court is located (New York) and where service is effected (Louisiana). Both Louisiana law (LSA-C.C.P. Art. 1262) and New York law (N.Y. BCL Section 306) provide for service of process on a corporation through the Secretary of State.

5.    Defendant UNPS has failed to appear or otherwise defend this action. More than 20 days have passed since the date of service of the Summons and Complaint upon Defendant UNPS as required by Fed. R. Civ. P. 12. Therefore, Plaintiff is entitled to a default judgment, pursuant to Fed. R. Civ. P. 55, which provides that "[w]hen a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend as provided by these rules and that fact is made to appear by affidavit or otheriwise, the clerk shall enter the party's default."

WHEREFORE, on behalf of Plaintiff CHRISTIAN AUGUSTIN VON HASSELL a/k/a AGOSTINO VON HASSELL, I respectfully request that the Clerk of the United States District Court for the Southern District enter a Certificate of Default, in the form accompanying this application, against Defendant University Press of the South, Inc.

Executed On: August 3, 2007

Donald E. Watnick (DW 6019)

2

Exhibit C to 4/1/08 Watnick Dec.

Donald E. Watnick (DW 6019)
LAW OFFICES OF DONALD WATNICK
292 Madison Avenue, 17th Floor
New York, New York 10017
(212) 213-6886
*Attorneys for Plaintiff*
*Christian Augustin von Hassell*
*a/k/a Agostino von Hassell*

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X

CHRISTIAN AUGUSTIN VON HASSELL a/k/a  :
AGOSTINO VON HASSELL,                                :        07 Civ. 3477 (LAK)
                                                                         :
                                     Plaintiff,                      :
          - against -                                                :
                                                                         :        DECLARATION
                                                                         :
ALAIN SAINT-SAËNS and UNIVERSITY       :
PRESS OF THE SOUTH, INC.,                          :
                                                                         :
                                     Defendants.                  :
                                                                         :
------------------------------------------------------------ X

     I, DONALD E. WATNICK, an attorney duly admitted to practice law in the State of New

York and this Court, hereby declare, under the penalty of perjury under the laws of the United

States of America, that the following statements are true and correct:

     1.    I am attorney of record in the above-entitled case for Plaintiff CHRISTIAN

AUGUSTIN VON HASSELL a/k/a AGOSTINO VON HASSELL, and am fully familiar with the

facts set forth herein. I make this Declaration in support of Plaintiff's application, pursuant to

Fed. R. Civ. P. 55(b)(2) and Local Rule 55.2(b) of this Court, for a default judgment against

defendant Alain Saint-Saens ("Saint-Saens") and a hearing in which to assess damages against

Saint-Saens.

     2.    In this action, Plaintiff seeks damages and related relief against defendants Saint-

Saens and University Press of the South, Inc. ("UNPS") arising from a a book publishing

agreement (the "Publishing Agreement") between Plaintiff, as author, and Defendants, as

publisher, with respect to Plaintiff's book, <u>Military High Life: Elegant Food, Histories and</u>

<u>Recipes</u> (the "Book"). As set forth in Amended Complaint, Defendants have failed to meet their

contractual and other obligations to promote, market and sell the Book, and have thereby caused

Plaintiff damages in excess of $350,000, plus additional damages for loss of reputation and

attorneys' fees and costs. (A copy of the Amended Complaint herein, to which defendant Saint-

Saens has not responded, is annexed hereto as Exhibit A.)

     3.     Jurisdiction of the subject matter of this action is pursuant to 28 U.S.C. Section

1332(a) because Plaintiff and Defendants are domiciled in different states and the amount in

controversy exceeds $75,000.

     4.     This action was commenced on May 1, 2007 by the filing of the Summons and

Complaint. Thereafter, pursuant to an order of this Court, Plaintiff filed an Amended Complaint

on May 30, 2007.

     5.     Service was made upon Defendant Saint-Saens in accordance with Fed. R. Civ. P.

Fed. R. Civ. 4(e), which provides for service pursuant to the state laws where the District Court is

located (New York) and thereby incorporates the rules for service in N.Y.C.P.L.R. 313 and 308.

     6.     In accordance with N.Y.C.P.L.R. 308(4), after making numerous attempts to

deliver the Summons and Complaint to Defendant Saint-Saens personally pursuant to

N.Y.C.P.L.R. 308(1) and/or to a person of suitable age and discretion pursuant to N.Y.C.P.L.R.

308(2), service was made upon Defendant Saint-Saens by affixing a copy of the Summons and

Complaint to his actual place of business and dwelling place or usual place of abode on July 16,

2007, and mailing a copy of the Summons and Complaint to his residence and actual place of

business on July 30, 2007. (A copy of the Affidavit of Service is annexed hereto as Exhibit B.)

7.      Fed. R. Civ. P. 12 provides that a defendant shall answer or move against a Complaint within 20 days of its service. Defendant Saint-Saens has failed to appear or otherwise defend this action, and more than 20 days have elapsed since the date of service of the Summons and Amended Complaint upon Defendant Saint-Saens.

8.      Defendant Saint-Saens has never indicated any intention to appear and defend this action. Defendant Saint-Saens returned a request for waiver of service of process without opening the package in which it was transmitted. My co-counsel and I have communicated repeatedly about the Publishing Agreement with an attorney identified as counsel for Defendant Saint-Saens, Nancy Marshall of Deutsch, Kerrigan & Stiles, LLP, in New Orleans, La.; but, she has not stated to me that she intended to appear and defend this action on behalf of Defendant Saint-Saens, or requested additional time in which to answer the complaint herein.

9.      Therefore, Plaintiff is entitled to a default judgment, pursuant to Fed. R. Civ. P. 55, which provides for a default judgment when a party against who judgment is sought "has failed to plead or otherwise defend as provided by these rules."

10.     On September 5, 2007, pursuant to Fed. R. Civ. P. 55(a) and Local Rule 55.1 of this Court, the Clerk of this Court entered a Certificate of Default, which is annexed to the accompanying Notice of Motion (and the original of which is included with the courtesy copy of the Notice of Motion provided to the Court).

11.     Defendant Saint-Saens is not an infant, and is not known to be or an incompetent person, and the U.S. Department of Defense, as set forth in the annexed Exhibit C, has verified that he is not a active member of the military service.

12.     Inasmuch as the amount of damages is not liquidated, in accordance with Fed. R. Civ. P. 55(a)(2) and Local Rule 55.2, I request a hearing to assess the amount of damages

sustained by Plaintiff and other relief to be ordered.

13.    On August 13, 2007, Plaintiff filed a motion for a default judgment against defendant UNPS. By order dated September 5, 2007, the Court granted that motion and directed that an inquest be held before a magistrate judge. (A copy of that order is annexed as Exhibit D.)

14.    No prior application for the relief requested herein has been made.

WHEREFORE, on behalf of Plaintiff CHRISTIAN AUGUSTIN VON HASSELL a/k/a AGOSTINO VON HASSELL, I respectfully request that this Court enter a Default Judgment against Defendant Alain Saint-Saens, and set an immediate hearing to determine damages and other relief against Defendant Alain Saint-Saens.

Executed On:  September 6, 2007

/s/Donald E. Watnick
Donald E. Watnick (DW 6019)

4

Exhibit A

Exhibit A to 9/6/07 Watnick Dec.

Ronald Watnick
LAW OFFICE OF RONALD WATNICK
261 Madison Avenue, 17th floor
New York, New York 10017
(212) 213-6888

*Attorneys for Plaintiff*
*Christian Augustin von Hassell*
*a.k.a. Agostino von Hassell*

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------X
CHRISTIAN AUGUSTIN VON HASSELL a.k.a.
AGOSTINO VON HASSELL,

                           Plaintiff,

        - against -

ALAIN SAINT-SAËNS and UNIVERSITY
PRESS OF THE SOUTH, INC.,

                           Defendants.
------------------------------------------X

07 Civ 3477 (LAK)

<u>FIRST AMENDED COMPLAINT</u>

<u>JURY TRIAL DEMANDED</u>

Plaintiff Christian Augustin von Hassell a.k.a Agostino von Hassell, by and through his

attorneys, Law Offices of Donald Watnick, for his Complaint against Defendants Alain Saint-

Saëns and University Press of the South, Inc. hereby alleges and argues as follows:

<u>NATURE OF THE ACTION</u>

This is an action for breach of contract, breach of the duty of good faith and fair

dealing, fraud and detrimental reliance in relation to a book publishing agreement between

Plaintiff Christian Augustin von Hassell a.k.a Agostino von Hassell ("von Hassell" or

"Plaintiff") as the author and Defendants Alain Saint-Saëns ("Saint-Saëns") and University Press

of the South, Inc. ("University Press") as publisher.

PARTIES

2.    Plaintiff von Hassell is domiciled in and is a citizen of the Commonwealth of Virginia, as well as a resident of the State of New York, with a residence located in New York County, and a principal place of business located at 300 Park Avenue, New York, New York. At all times, Plaintiff von Hassell conducted and participated in all or substantially all of the transactions and communications described herein from his office in the State of New York.

3.    Defendant University Press is a corporation organized under the laws of the State of Louisiana with its principal place of business located at 5500 Prytania Street, PMB 421, New Orleans, Louisiana, and is a citizen of the State of Louisiana.

4.    Defendant Saint-Saëns, upon information and belief, is the President of University Press, and is domiciled in and is a citizen of the State of Louisiana.

JURISDICTION AND VENUE

5.    This Court has jurisdiction over this matter based on diversity of citizenship pursuant to 28 U.S.C. §1332(a) because the parties are citizens of different states and the amount in controversy exceeds $75,000.

6.    At all relevant times, Defendants have conducted business in the State of New York, including through one or more interactive web-sites and in connection with the transactions, facts and circumstances set forth herein.

7.    Venue is appropriate in this District pursuant to 28 U.S.C. §1391 because a substantial part of the events and omissions giving rise to the claims herein occurred in this District.

8.    Pursuant to Fed.R.Civ.P. 38(b), Plaintiff hereby demands a jury trial of the claims asserted herein.

FACTS COMMON TO ALL ALLEGATIONS

**Plaintiff is an Established Author on Military History**

9.      In this action, Plaintiff seeks to recover more than $350,000 in damages arising from Defendants' failure to perform under a book publishing agreement and to keep legally binding promises, and fraudulently inducing Plaintiff to execute a publishing agreement with respect to Plaintiff's book, *Military High Life: Elegant Food, History, and Recipes* (the "Book"). (A copy of the cover of the Book is annexed as Exhibit A hereto.)

10.     As described in a 2006 review in *The Wall Street Journal*, the Book is a "marketable volume" that is intended to be a tour of military kitchens and officers' messes over the years, and "includes 141 beautiful color illustrations and 73 interesting recipes." von Hassell, who was a captain in the U.S. Marine Corps, created and is the lead author of the Book.

11.     Plaintiff also has authored several other books about the U.S. Marine Corps and the U.S. military, including *Warriors: The United States Marine Corps; Strike Force: Marine Corps Special Operations; West Point: The Bicentennial Book;* and *In Honor of America* He is most recently co-author of the historical volume *Alliance of Enemies: The Untold Story of the Secret American and German Collaboration to End World War II,* published by St. Martin's Press.

12.     To develop and produce the Book, including fees for design, photography, research, writing and editing, Plaintiff incurred costs of in or about $190,000. Plaintiff also devoted hours of his own time to developing and writing the Book.

**The Publishing Agreement Between the Parties**

13.     By agreement dated May 8, 2006, Plaintiff and University Press executed a Publishing Agreement, whereby Plaintiff granted University Press the exclusive world-wide

rights to publish and sell Plaintiff's Book in the English language. The parties thereafter executed an Addendum to the Publishing Agreement. (A copy of the Publishing Agreement and Addendum thereto (collectively, the "Agreement") are annexed as Exhibit B hereto and fully incorporated herein.)

14.    The Agreement provides that University Press has "the sole and exclusive right to . . . print, publish and sell" the Book in the English language. The Agreement further states that University Press "has the exclusive, unlimited right to license or permit others to publish, reproduce or provide the work in whole or in part," and that these rights include all forms of publication.

15.    Under the Agreement, University Press agreed to market and promote the Book and work with Plaintiff in "an equitable manner" to distribute the Book.

16.    The Agreement imposed start-up costs on Plaintiff for the publication and promotion of the Book. Plaintiff agreed to pay to University Press $500 upon signing the Agreement, $2,100 for the costs of publication, and to pay all costs of printing of the Book.

17.    In executing the Agreement, University Press agreed to pay Plaintiff royalties equal to 50% of the net cash receipts from the sale of the Book.

18.    University Press also agreed to "provide in a timely manner sales reports to the [Plaintiff]," which sales reports were to be sent every two months and contain all relevant sales information, and to allow Plaintiff or "his representative to inspect sales records" for the Book.

19.    The Agreement stated that it would terminate five years after the publication date if the Book was out of print and the publisher did not re-print it after a written demand by Plaintiff.

20.    Finally, the Agreement, which contained no choice-of-forum clause, is governed

by Louisiana law.

**Defendants' False Representations to the Plaintiff**

21.     Prior to Plaintiff's execution of the Agreement, University Press and Salzberg falsely represented to Plaintiff that University Press was a full service publisher and book distributor, with the sales infrastructure and personnel to market, promote, sell and distribute books and a strong sales record on behalf of other authors. Defendants falsely represented the existence of, and Plaintiff relied on the existence of, University Press having a fully functioning on-line, web-based sales system, telephone systems to sell the Book and facilities and personnel to store and ship substantial inventory of the Book.

22.     Defendants also falsely represented to Plaintiff that, if he signed a publishing agreement with University Press, Defendants would utilize their affiliate and partner publishing house Presse Universitaire du Nouveau Monde in Europe to sell the Book.

23.     In addition, Defendants falsely represented that if Plaintiff signed a publishing agreement with University Press, Defendants would have a full distribution plan in place, complete with advertising and promotional articles. Defendants also falsely represented that they had extensive experience in developing and implementing such promotional plans.

24.     Defendants falsely stated that such advertising and promotional plan would include listing the Book on "Amazon.com" and other web-sites, and that placing the Book with distributors and into book stores would be easy and a matter of course, in light of their alleged experience.

25.     Moreover, Defendants represented to Plaintiff that the Book would generate at least $150,000 in royalties to Plaintiff.

26.     After the Agreement was fully executed between Plaintiff and University Press,

Defendants continued to falsely represent and promise to Plaintiff that they were using and would use their best efforts to sell, market and promote the Book and that they were capable of and experienced in doing so.

27.    By virtue of its exclusive right to sell, market, promote and distribute the Book over, at a minimum, a five year period, University Press had a duty to use its best efforts to perform its obligations under the Agreement.

Plaintiff Has Fully Performed Under the Agreement

28.    Plaintiff has fully performed the Agreement, including paying to University Press a total of $2,500, and delivering to University Press 5,000 copies of the Book after University Press approved the manuscript.

29.    Plaintiff paid approximately $42,100 to print 6,000 copies of the Book, including the 5,000 copies delivered to University Press. Plaintiff paid an additional approximately $400 to ship copies of the Book to University Press.

30.    Plaintiff also has incurred more than $34,000 in costs associated with printing, developing, distributing, marketing and promoting the Book, as well as devoting extensive amounts of his own time to marketing and promoting the Book.

Defendants Have Failed to Perform Under the Agreement and Have Otherwise Acted Improperly

31.    University Press has failed to perform any of its obligations under the Agreement, including without limitation failing to promote, market, sell or distribute the Book, failing to work with Plaintiff to promote, market and sell the Book and failing to comply with its obligations to provide royalty reports and sales information to Plaintiff.

32.    In particular, Defendants have failed to comply with their obligations to make

efforts to distribute the Book on line, to distributors or to book-stores. Instead of promoting and marketing the Book to maximize sales, Defendants have undercut the Book by not coordinating with Plaintiff on promotional efforts, disregarding sales leads, issuing promotional material that was incomplete, illiterate or inaccurate and not timely shipping the Book.

33.     Potential distributors and purchasers of the Book, including book stores and universities, who have attempted to communicate with Defendants to order the Book, have been unable to do so because University Press did not have fully functioning telephone lines or a web-based sales system, or have found that Defendants did not respond to their communications.

34.     In further violation of the Agreement, University Press failed to pay royalties and failed to issue royalty reports as provided for in the Agreement. University Press also refused to allow Plaintiff to inspect sales records for the Book, even though the Agreement entitled Plaintiff to inspect such records.

35.     Upon information and belief, Defendants' actions in breach of the Agreement and their promises to Plaintiff have been purposeful and wilful. Defendants have refused to communicate with Plaintiff directly, informed Plaintiff's representatives that Defendants did not read any emails sent by Plaintiff and, upon information and belief, deleted emails from Plaintiff about selling and promoting the Book, and have refused to engage in any sales, marketing or promotional activities for the Book.

36.     Moreover, when Plaintiff demanded that University Press fulfill its obligations under the Agreement, Defendants then insisted that Plaintiff first pay to Defendants as much as an additional $30,000 before they would comply with their binding and pre-existing obligations.

37.     As a result of University Press' breaches of the Agreement, and Defendants' fraudulent misrepresentations and failure to abide by its binding promises and commitments,

Plaintiff has been damaged in an amount to be determined at trial, but in no event less than $200,000. Defendants' wrongful actions have caused further damage to Plaintiff because he has lost hundreds of thousands of dollars in profits that he would have made on the Book, his reputation as an author has been damaged, and he has been forced to incur substantial costs, including attorneys' fees. The amounts of these foregoing damages are no less than $350,000 and will be proven at trial.

## FIRST CAUSE OF ACTION
### (Breach of Contract against Defendant University Press)

38.     Plaintiff repeats and realleges the allegations contained in paragraphs 1 to 37 with the same force and effect as if fully set forth and incorporated herein.

39.     As set forth herein, the Agreement was a valid and enforceable agreement between Plaintiff and University Press, which obligated University Press, inter alia, to sell, promote, market and distribute the Book, pay royalties to Plaintiff for sales of the Book, and provide to Plaintiff royalty reports and information about sales of the Book.

40.     At all times, Plaintiff fully performed the Agreement.

41.     University Press unlawfully breached the Agreement by failing and refusing to sell, promote, market and distribute Book, failing and refusing to pay royalties to Plaintiff for sales of the Book, failing and refusing to provide to Plaintiff royalty reports or sales information for the Book, and engaging in other conduct that unlawfully violated the Agreement.

42.     As a direct result of University Press' foregoing breaches, Plaintiff has been damaged in an amount to be determined at trial but equal to at least $200,000, plus lost profits for the Book in an amount to be determined at trial but equal to at least $150,000, damage to his reputation as an author, interest and costs, including attorneys' fees.

8

## SECOND CAUSE OF ACTION
### (Breach of Duty of Good Faith and Fair Dealing against Defendant University Press)

43.    Plaintiff repeats and realleges the allegations contained in paragraphs 1 to 42 with the same force and effect as if fully set forth and incorporated herein.

44.    As a matter of law, including without limitation under La. Civil Code Section 1983, and by virtue of having exclusive rights to sell, promote, market and distribute the Book, the Agreement imposed upon University Press a duty of good faith and fair dealing, including without limitation a duty to use best efforts to fulfill the terms and conditions of the Agreement, and not engage in deceptive and dishonest acts.

45.    By failing and refusing to undertake appropriate efforts to sell, market, promote and distribute the Book, and then insisting that it would not do so unless Plaintiff paid University Press as much as $30,000 in excess of what it was due under the Agreement, University Press unlawfully breached its duty of good faith and fair dealing.

46.    University Press further unlawfully breached its duty of good faith and fair dealing by engaging in deceptive and dishonest acts, including refusing to communicate with Plaintiff and his representatives and making false and inaccurate statements about its efforts to sell, market, promote and distribute the Book.

47.    As a direct result of University Press' foregoing breaches, Plaintiff has been damaged in an amount to be determined at trial but equal to at least $200,000, plus lost profits for the Book in an amount to be determined at trial but equal to at least $150,000, damage to his reputation as an author, interest and costs, including attorneys' fees.

## THIRD CAUSE OF ACTION
### (Fraud against both Defendants)

48.    Plaintiff repeats and realleges the allegations contained in paragraphs 1 to 47 with

the same force and effect as if fully set forth and incorporate herein.

49.    In inducing plaintiff to execute the Agreement, Defendants represented that University Press was a full service publisher and book distributor, with the sales infrastructure and personnel to distribute books and a strong sales record on behalf of other authors.

50.    Defendants further represented that University Press' sales infrastructure included a fully functional on-line web-based sales system, both the telephone systems and personnel to sell and promote the Book, place and accept orders for the Book and distribute the Book, a facility from which inventory of the Book could be stored and distributed and European affiliates to sell and promote the Book.

51.    Defendants also represented that they would put in place a promotional plan for the Book and that they had the experience and track-record to readily develop and implement such a plan.

52.    Each of these representations by Defendants was material.

53.    Each of these representations by Defendants was false and misleading at the time that they were made.

54.    Defendants knowingly or recklessly made each of these representations with full knowledge that each of them was materially false and misleading when made to Plaintiff.

55.    Defendants made these false and misleading representations for the purpose of inducing Plaintiff to execute the Agreement and engage in business dealings with Defendants with respect to the Book.

56.    Plaintiff reasonably relied upon Defendants' false and misleading representations, in executing the Agreement and engaging in business dealings with Defendants, and would not have otherwise executed the Agreement and engaged in business dealings with Defendants.

57.    As a direct and proximate result of Defendants' false and misleading

representations, Plaintiff has sustained damages in an amount to be proven at trial but equal to at

least $200,000, plus lost profits for the Book in an amount equal to at least $150,000, damage to

his reputation as an author, interest and costs, including attorneys' fees.

## FOURTH CAUSE OF ACTION
### (Detrimental Reliance against both Defendants)

58.    Plaintiff repeats and realleges the allegations contained in paragraphs 1 to 57 with

the same force and effect as if fully set forth and incorporated herein.

59.    In inducing Plaintiff to execute the Agreement, Defendants represented the

University Press was a full service publisher and book distributor, with the sales infrastructure

and personnel to distribute books and a strong sales record on behalf of other authors.

60.    Defendants further represented that University Press' sales infrastructure included

a fully functional on-line web-based sales system, both the telephone systems and personnel to

sell and promote the Book, place and accept orders for the Book and distribute the Book, a

facility from which inventory of the Book could be stored and distributed and European affiliates

to sell and promote the Book.

61.    Defendants also represented that they would put in place a promotional plan for

the Book and that they had the experience and track-record to readily develop and implement

such a plan.

62.    Each of these representations by Defendants was material.

63.    Each of these representations by Defendants was false and misleading at the time

that they were made.

64.    Defendants knowingly or recklessly made each of these representations with full

knowledge that each of them was materially false and misleading when made to Plaintiff.

65.     Defendants made these false and misleading representations for the purpose of inducing Plaintiff to execute the Agreement and engage in business dealings with Defendants with respect to the Book.

66.     Plaintiff reasonably relied to his own detriment upon Defendants' false and misleading representations, in executing the Agreement and engaging in business dealings with Defendants, and would not have otherwise executed the Agreement and engaged in business dealings with Defendants.

67.     As a direct and proximate result of Defendants' false and misleading representations, upon which Plaintiff reasonably relied to his own detriment, Plaintiff has sustained damages in an amount to be proven at trial but equal to at least $200,000, plus lost profits for the Book in an amount equal to at least $150,000, damage to his reputation as author, interest and costs, including attorneys' fees.

        WHEREFORE, plaintiff Christian Augustin von Hassell a.k.a Agostino n Hassel respectfully requests judgment against defendants Alain Saint-Paens and University Press of the South, Inc. as follows:

                (i)     Awarding money damages as set forth in each cause of action to compensate Plaintiff's losses in an amount to be proven at trial, but in no event less than $200,000.

                (ii)    Awarding money damages as set forth in each cause of action for Plaintiff's lost profits in an amount to be proven at trial but in no event less than $150,000.

12

(iii)    Awarding money damages as set forth in each cause of action for

Plaintiff's loss of reputation in an amount to be proven at trial.

(iv)    Awarding costs and attorneys' fees and such other relief as this Court

deems just and equitable.

Dated: New York, New York
         May 15, 2007

LAW OFFICES OF DONALD WATNICK

By: _____
         Donald E. Watnick (DW 6019)
         292 Madison Avenue – 17th Floor
         New York, New York 10017
         (212) 213-6886
         *Attorneys for Plaintiff*
         Christian Augustin von Hassell *a/k/a*
         *Agostino von Hassell*

**Of Counsel:**
Edward F. Maluf (EM 6884)
BINGHAM McCUTCHEN LLP
399 Park Avenue
New York, New York  10022
(212) 705-7000

13

# MILITARY HIGH LIFE

## ELEGANT FOOD HISTORIES AND RECIPES



*Created by Agostino von Hassell*
*Herm Dillon & Leslie Jean-Bart*
*Introduction by John Besh*

# University Press of the South

## PUBLISHING AGREEMENT

Made this day of May 8, 2006
By and between Mr. Agostino von Hassel,
The Repton Group LLC, 26th Floor, New York, NY 10022
hereinafter referred to as the "author" (in the case of multiple authorship the word "author" is used collectively) and
UNIVERSITY PRESS OF THE SOUTH, Inc.
5500, Prytania Steet, PMB-421
New Orleans, LA 70115  USA

hereinafter referred to as the "publisher."
The parties do agree as follows:

**I) Subject of the Publishing Agreement**
1.1  The Subject of the Publishing Agreement is a work written by the author with the following title:

Military High Life. Elegant Food Histories and Recipes.

hereinafter referred to as the "work." In the event either the publisher or the author wishes to retitle the work after this Publishing Agreement is signed, the new title shall be selected by consultation by the two parties.
1.2  The work shall appear in the Series:

Cooking Culture Series.

In the event the work is assigned to a different series after this Publishing Agreement is signed, the new series shall be selected by consultation by the two parties.

**II) Rights to the Work**
2.1  The author represents and warrants that he or she is the sole author and sole proprietor of all rights in and to the work; that the work is original and is not in the public domain; that it has not previously been published; that it does not violate or infringe any copyright, whether law or statutory, and contains nothing libelous or otherwise contrary to law; and that he or she has full power to enter into this Publishing Agreement.
2.2  The author shall indemnify and hold harmless the publisher and those to whom the publisher may license or grant rights hereunder and any seller of the work against any and all losses, damages, liability, and expenses, including attorney's fees, that the publisher may incur in the event any suit, claim, demand, action or proceeding is asserted or instituted against the work, the publisher, a licensee or grantee of the publisher or any seller of the work. If any suit, claim, demand, action, or proceeding is instituted, the publisher shall promptly notify the author, who shall fully cooperate in the defense thereof. The publisher may withhold payments of any and all royalties that might otherwise be due to the author under this or any other agreement between the parties until such time as the suit, claim, demand, action or proceeding is settled, withdrawn or finally resolved. The publisher shall have the right to select counsel in all such suits, claims, demands, actions or proceedings.
2.3  The author hereby grants and assigns to the publisher the following rights in and to the work during the full terms of copyright and all renewals and extensions thereof, under the present or future laws of the United States, all other countries throughout the world and all international copyright conventions:
- The sole and exclusive right to: a) print, publish and sell the work or cause the same to be printed, published and sold in book form in English throughout the world; and b) all subsidiary rights to the work or any part thereof now existing or hereafter invented or created and the right to grant these rights to third parties, in English throughout the world without limitation.
The author specifically authorizes the publisher to copyright throughout the world in the name of the publisher the work or any revision or other edition thereof in English. The publisher shall have the right to renew such copyrights if the publisher deems it advisable. However, the actual copyright shall be held by Agostino von Hassel and this shall so be reflected on the copyright page.
2.4  The publisher has the exclusive, unlimited right to license or to permit others to publish, reproduce or provide the work in whole or in part and in any and all forms, formats, systems and materials. These rights shall include book club, paperback, translation, abridgment, adaptation, foreign editions, selections, motion picture, film, television, broadcasting, audio and video reproducing and recording systems, microfilm, large-type editions, Braille, and computer systems now known or hereafter invented.
2.5  The rights detailed in 2.4 shall be subject to the same royalty sharing agreement as spelled out in Section VIII.

**III) Permissions**
If the author incorporates in the work any illustrative or copyrighted material, he or she shall procure, at his or her own expense, written permission to reprint the illustrations or copyrighted material in all editions of the work and for all uses of the work covered by this agreement.
The author shall deliver such permissions to the publisher at the time of delivery of the final manuscript.

# PUBLISHING AGREEMENT

**IV) The Manuscript and Publication**

4.1  On or before July 1st, 2006, the final manuscript of the work shall be delivered to the publisher either ready for reproduction by photo-offset ("camera-ready") or copy-edited and ready to be typeset, together with any permissions required pursuant to Clause III. The method of composition shall be agreed upon by the parties and shall be inserted in Clause 5.1 below. Publisher and author shall make every attempt to complete the pre-production of this work to allow shipment to the printer as early as possible to meet the fall 2006 holiday selling season. Publisher is aware that the work is at this time essentially camera ready yet still subject to revisions as required by the publisher.

   If the author does not submit the manuscript by the above date, the author must ask the publisher for an extension to a date which shall be agreed upon by the parties. If the author does not submit the manuscript by the new date, the publisher may at its discretion grant the author a second extension or terminate this agreement by giving written notice, whereupon the author shall repay forthwith any and all monies advanced by the publisher. In the event the agreement is terminated, the publisher shall not be obligated to return to the author any monies paid to the publisher upon the signing of the agreement.

   The author further agrees to supply promptly, at his or her own expense, all photographs, drawings, charts, indexes, or other material mutually agreed upon as necessary to the completion of the manuscript. If the author fails to do so, the publisher shall have the right to supply such material and charge the cost to the author.

4.2  In the event the author delivers the manuscript to the publisher by mail, the author shall send the manuscript by registered or certified mail or use a form of delivery which will ensure receipt by the publisher.

4.3  The author shall retain a duplicate copy of the manuscript which is delivered to the publisher.

4.4  The final manuscript shall be subject to approval by the publisher. If the manuscript is unacceptable, the author shall make revisions as requested by the publisher. In the event the revised manuscript is unacceptable, the publisher may terminate this Publishing Agreement by giving written notice, whereupon the author shall repay forthwith any and all monies advanced by the publisher and may then submit the work to others.

   It is understood and agreed that no duty shall devolve upon the publisher under this agreement until such time as the manuscript has been completed and edited to the satisfaction of the publisher. In no event shall the publisher be obligated to publish a work which in the judgment of its attorneys may lead to legal liability. In the event the author fails to make the work publishable within forty-five (45) days after notice from the publisher, the author shall repay forthwith all monies advanced by the publisher and the agreement shall be deemed terminated. In the event the agreement is terminated pursuant to this clause, the publisher shall not be obligated to return to the author any monies paid to the publisher upon signing.

4.5  The publisher shall arrange for copies of the work to be ready not later than six months after the author delivers the final manuscript. Any change in the date specified in Clause 4.1 for delivery of the final manuscript by the author shall delay the publication date. The publisher shall not be responsible for unforeseen delays resulting from strikes, Acts of God or other causes beyond its control or from the author's failure to deliver the final manuscript within the period of time mutually agreed upon.

**V) Production**

5.1  Method of composition:  Camera-ready

5.2  If the author agrees to deliver a camera-ready manuscript, the technical quality and accuracy of the final manuscript shall conform to the guidelines supplied by the publisher. If the camera-ready manuscript delivered by the author contains typographical or format errors, the publisher shall return the manuscript to the author who shall make the necessary corrections at his or her own expense and return the manuscript to the publisher by a date mutually agreed upon.

5.3  If Clause 5.1 provides that the publisher will compose the manuscript, the author agrees to read and correct the proofs of the work and return them to the publisher within a period of time mutually agreed upon. Any author's alterations shall be charged to the author.

5.4  If the work contains illustrations or other artwork, the author shall pay for and deliver promptly any screened film or color separations, along with camera-ready mechanicals for positioning within the work. If the author fails to supply the artwork promptly or in the necessary form, the publisher shall have the right to supply it and charge the cost to the author.

5.5  If the final manuscript is camera-ready, the publisher shall begin directly to prepare the manuscript for printing. If the manuscript is to be composed by the publisher, the author and the publisher shall agree to the financial arrangements for composition before the publisher begins to prepare the manuscript for printing.

5.6  The publisher and the author agree that the manuscript will be printed in Hong-Kong and the cost of printing is covered by the author. Printed copies will be shipped by the printer to the publisher at author's cost.

5.7  When the work is first printed, the following free copies shall be made available by the publisher:

- 130 copies for the author.

5.7  The author may purchase additional copies of the work for personal use at the actual shipping and handling costs of the of the publisher. Such copies shall not be for resale unless expressly provided in this Publishing Agreement.

5.8  The work shall be sold at a price which shall be determined by the publisher.

5.10  The author shall receive 25 copies of any subsequent printings.

**VI) Promotion**

The publisher shall promote the work in the style and manner which in its sole judgment is best suited to its sale. The publisher and any licensees or assigns of the publisher shall have the right to use the name, image, likeness and biography of the author in advertising and publicity. Publisher recognizes that the author will underwrite promotion activities as agreed upon jointly between the publisher and the author. Publisher shall work with the author in an equitable manner international distribution of the work abroad and in the English edition.

# PUBLISHING AGREEMENT

Page 3

**VII) Revised Editions**
The publisher, after consultation with the author, shall have the sole discretion to decide that a revision of the work is desirable. At the publisher's request, the author agrees to deliver final copy for a revised edition satisfactory to the publisher in content and form by a date which shall be mutually agreed upon by the parties. If the author is unable to undertake the revision or is deceased, the publisher may arrange for the preparation of a revised edition. The compensation paid to the reviser(s) shall be charged against any sums accruing to the author on the sale of the revised edition. The publisher shall have the sole discretion to use the name of the author and/or reviser(s) on any revised edition of the work.

**VIII) Royalties**
10. 1 The author shall receive royalties on copies of the work sold by the publisher.
10. 2 The publisher shall pay a royalty of fifty percent (50%) of its net cash receipts from its sale of the work beginning with copy1. Royalties shall be paid bi-annually in the third week of February and the third week of July for the prior six month sales period. In order to receive royalties, the author agrees to notify the publisher of any change of address.
10. 3 For copies of the work sold outside the United States through distributors, the publisher shall pay the author a royalty of fifty percent (50%) based on the amount credited to the publisher as a result of the sale.
10. 4 For all other copies of the work sold outside the United States and/or sold at discounts from the publisher's stated list price of more than fifty percent (50%), the author shall be paid a royalty of fifty percent (50%) of the net cash received.
10. 5 Royalties shall not be paid on sales made to the author, or on copies used for promotional purposes.
10. 6 The author shall be paid by check in U.S. dollars, unless otherwise specified in this Publishing Agreement.
10. 7 Publisher shall, upon request, allow the author or his representative to inspect sales records.
10. 8. Publisher shall provide in a timely manner sales reports to the author. Such reports shall be prepared and sent ever two moths and shall detail all relevant sales information (sales, returns etc.).

**IX) Subsidiary Rights**
11. 1 The publisher and the author shall share the exclusive right to all subsidiary rights to the work now existing or hereafter invented or created. The publisher alone may make arrangements with respect to these rights both on its own behalf and on behalf of the author. The net receipts from the sale or other disposition of subsidiary rights shall be divided equally between the publisher and the author.

**X) Overstock Copies**
If after four (4) years after publication date a substantial number of unsold copies remain in stock, the publisher shall have the right to clear its inventory of the work. The publisher shall notify the author and the author shall have the right to buy copies at a reduced price which shall be negotiated.

**XI) Termination**
If after five (5) years after publication date the work is out of print and within nine (9) months after written demand by the author the publisher does not bring out a new printing, this Publishing Agreement shall terminate. The publisher shall continue to share in the proceeds from the sale or other disposition of any subsidiary rights which have already been granted. The work shall be considered in print if it is or sale by the publisher or under license granted by the publisher, or if any contract or option for its publication, granted by the publisher, is outstanding.

**XII) Parties Bound**
This Publishing Agreement shall be binding upon the heirs, executors, administrators and assigns of the author and upon the successors and assigns of the publisher.

**XIII) Applicable Law**
This Publishing Agreement shall be governed by and interpreted in accordance with the laws of the State of Louisiana regardless of the place of its execution.
In witness whereof the parties hereto have executed this Publishing Agreement as of the day, month and year first above written

University Press of the South, Inc.

Dr. ALAIN SAINT-SAËNS

Dr. AGOSTINO VON HASSELL

_____
Author

_____
Publisher

# ADDENDUM
## TO THE PUBLISHING AGREEMENT

**I) Contractual Fees**
A check in the amount of five hundred dollars ($500.00), payable to University Press of the South, Inc. and non-refundable shall be delivered to the publisher with the signed copy of this Publishing Agreement.

**II) Author's Contribution to the Cost of Publication**
2.1 The author shall contribute the sum of two thousand dollars ($2,000.00), in ONE non-refundable payment, when paying the contractual fees.
2.2 The author shall pay for the cost of printing of the first edition and any other printings. If the first printing of the work is sold out within two years after publication date, the author shall produce a second printing at its own expense. Any printings after the second printing shall be produced at the sole discretion of the publisher.
2.3. If the author asks the publisher to prepare the manuscript camera-ready, he shall contribute the sum of fifteen hundred dollars ($1,500.00) in one non-refundable payment, along with a photocopy of the manuscript and a PC compatible diskette of the manuscript.

**III) Parties Bound**
This Addendum to the Publishing Agreement shall be binding upon the heirs, executors, administrators and assigns of the author and upon the successors and assigns of the publisher.

**IV) Applicable Law**
This Addendum to the Publishing Agreement shall be governed by and interpreted in accordance with the laws of the State of Louisiana regardless of the place of its execution.
In witness whereof the parties hereto have executed this Addendum to the Publishing Agreement as of the day, month and year indicated in the Publishing Agreement.

University Press of the South, Inc.

Dr. ALAIN SAINT-SAËNS

_____
Publisher

Dr. AGOSTINO VON HASSELL

_____
Author

Exhibit B to 9/6/07 Watnick Dec.

## Service of Process:

1:07-cv-03477-LAK Von Hassel v. Saint-Saens
ECF



U.S. District Court

United States District Court for the Southern District of New York

### Notice of Electronic Filing

The following transaction was entered by Watnick, Donald on 8/10/2007 at 5:11 PM EDT and filed on
8/10/2007

**Case Name:**      Von Hassel v. Saint-Saens
**Case Number:**    1:07-cv-3477
**Filer:**          Christian Augustin Von Hassel
**Document Number:** 6

**Docket Text:**
AFFIDAVIT OF SERVICE of Summons and Amended Complaint,. Alain Saint-Saens served on
7/30/2007, answer due 8/20/2007. Service was made by affix and mail. Document filed by Christian
Augustin Von Hassel. (Watnick, Donald)

**1:07-cv-3477 Notice has been electronically mailed to:**

Donald E. Watnick   dwatnick@watnicklaw.com

**1:07-cv-3477 Notice has been delivered by other means to:**

The following document(s) are associated with this transaction:

**Document description:** Main Document
**Original filename:** n/a
**Electronic document Stamp:**
[STAMP dcecfStamp_ID=1008691343 [Date=8/10/2007] [FileNumber=3676917-0
] [6972eee1d07c80e77ff6319f0702757593f542f306982cf4d1073f9a75533b6580c
81d84fbebc07732f579e15c9f6db874f54e611e5f63e6dd15d661188d5c86]]

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------X
CHRISTIAN AUGUSTIN VON HASSELL a/k/a    :    Index No. 07 Civ. 3477
AGOSTINO VON HASSELL,                                     :

          Plaintiff,                                         :

      - vs. -                                                       :    Affidavit of Service

ALAIN SAINT-SAENS and UNIVERSITY          :
PRESS OF THE SOUTH, INC.,                             :
          Defendants.                                     :
------------------------------------------------X

State of Louisiana  )
                  ss:
County of *Jefferson*

*Ryan Wills* [insert name], being duly sworn, deposes and says:

    1.    I am over 18-years-old, am not a party to the above-entitled lawsuit, and am employed by Bombet Cashio & Associates, 11220 N. Harrells Ferry Road, Baton Rouge, LA.

    2.    After making repeated attempts to serve defendant Alain Saint-Saens by personal service, or by service through a person of suitable age and discretion at defendant's actual place of business, dwelling place or usual place of abode, I effected service of the Summons and Complaint in the above-entitled lawsuit by affixing, on July 16, 2007, a copy of the Summons and Complaint to the door at the address of 2132 Broadway St., New Orleans, LA. 70118, and then mailing, on *July 30,* 2007, a copy of the Summons and Complaint to the defendant at the addresses of 5500 Prytannia Street, PMB 421, New Orleans, LA. 70115 and 2132 Broadway St., New Orleans, LA. 70118, by first-class mail, postage pre-paid, in an envelopes bearing the legend "personal and confidential" and not indicating on the outside

thereof, by return address or otherwise, that the communication is from an attorney or concerns an action against the person to be served.

_Py-Cuclee_
[INSERT NAME OF AFFIANT]

Sworn to this

Day of ~~July~~, 2007
*august*

_Harold C Buchler_

Notary Public

HAROLD A. BUCHLER, JR.
NOTARY PUBLIC
JEFFERSON PARISH, LOUISIANA
MY COMMISSION IS FOR LIFE
NOTARY ID 12197

Exhibit C to 9/6/07 Watnick Dec.

Department of Defense Manpower Data Center

AUG-30-2007 11:36:22



Military Status Report
Pursuant to the Servicemembers Civil Relief Act

| ◄ Last Name | First/Middle | Begin Date | Active Duty Status | Service/Agency |
|---|---|---|---|---|
| SAINT-SAENS | alain | | Based on the information you have furnished, the DMDC does not possess any information indicating that the individual is currently on active duty. | |

Upon searching the information data banks of the Department of Defense Manpower Data Center, based on the information that you provided, the above is the current status of the individual as to all branches of the Military. **HOWEVER, WITHOUT A SOCIAL SECURITY NUMBER, THE DEPARTMENT OF DEFENSE MANPOWER DATA CENTER CANNOT AUTHORITATIVELY ASSERT THAT THIS IS THE SAME INDIVIDUAL THAT YOUR QUERY REFERS TO. NAME AND DATE OF BIRTH ALONE DO NOT UNIQUELY IDENTIFY AN INDIVIDUAL.**

*Mary M. Snavely-Dixon*

Mary M. Snavely-Dixon, Director
Department of Defense - Manpower Data Center
1600 Wilson Blvd., Suite 400
Arlington, VA 22209-2593

The Defense Manpower Data Center (DMDC) is an organization of the Department of Defense that maintains the Defense Enrollment and Eligibility Reporting System (DEERS) database which is the official source of data on eligibility for military medical care and other eligibility systems.

The Department of Defense strongly supports the enforcement of the Servicemembers Civil Relief Act [50 USCS Appx. §§ 501 et seq] (SCRA) (formerly the Soldiers' and Sailors' Civil Relief Act of 1940). DMDC has issued hundreds of thousands of "does not possess any information indicating that the individual is currently on active duty" responses, and has experienced a small error rate. In the event the individual referenced above, or any family member, friend, or representative asserts in any manner that the individual is on active duty, or is otherwise entitled to the protections of the SCRA, you are strongly encouraged to obtain further verification of the person's active duty status by contacting that person's Military Service via the "defenselink.mil" URL provided below. If you have evidence the person is on active-duty and you fail to obtain this additional Military Service verification, provisions of the SCRA may be invoked against you.

If you obtain further information about the person ( e.g., an SSN, improved accuracy of DOB, a middle name), you can submit your request again at this Web site and we will provide a new certificate for that query.

This response reflects current active duty status only. For historical information, please contact the Military Service SCRA points-of-contact.

Exhibit D to 9/6/07 Watnick Dec.

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
CHRISTIAN AUGUSTIN VAN HASSEL, etc.,

                    Plaintiff,

          -against-                                        07 Civ. 3477 (LAK)

ALAIN SAINT-SAËNS, et ano.,

                    Defendants.
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

                            **ORDER**

LEWIS A. KAPLAN, *District Judge.*

          Plaintiff's motion for a default judgment against defendant University Press of the South, Inc., is granted. The matter is referred to a magistrate judge for an inquest, which may await resolution of the action against the other defendant.

          SO ORDERED.

Dated:          September 5, 2007

                                        _____
                                              Lewis A. Kaplan
                                        United States District Judge

USDS SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 9/6/07