```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X
CHRISTINA AUGUSTIN VON HASSELL a/k/a  :
AGOSTINO VON HASSELL,
                                      :
                                              07 Civ. 3477 (LAK)
              Plaintiff,              :

  - against -                         :

                                      :
ALAIN SAINT-SAENS and UNIVERSITY      :
PRESS OF THE SOUTH, INC.,
                                      :
              Defendants.             :
------------------------------------------------------------X
```

### INQUEST MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF'S APPLICATION FOR DAMAGES

LAW OFFICES OF DONALD WATNICK
**Attorneys for Plaintiff**
**292 MADISON AVENUE**
**17TH FLOOR**
**NEW YORK, NEW YORK 10017**
**Office: (212) 213-6886**

Donald E. Watnick (DW 6019)
LAW OFFICES OF DONALD WATNICK
292 Madison Avenue, 17th Floor
New York, New York 10017
(212) 213-6886
*Attorneys for Plaintiff*
*Christian Augustin von Hassell*
*a/k/a Agostino von Hassell*

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------X
CHRISTIAN AUGUSTIN VON HASSELL a/k/a         :
AGOSTINO VON HASSELL,                                            :     07 Civ. 3477 (LAK)
                                                                                      :
                            Plaintiff,                                         :
     - against -                                                                :
                                                                                      :
ALAIN SAINT-SAËNS and UNIVERSITY                     :
PRESS OF THE SOUTH, INC.,                                     :
                                                                                      :
                            Defendants.                                     :
                                                                                      :
-------------------------------------------------------------X

## INQUEST MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF'S APPLICATION FOR DAMAGES

### PRELIMINARY STATEMENT

Plaintiff, Agostino von Hassell ("von Hassell" or "Plaintiff"), by his undersigned attorneys, hereby submits this memorandum of law in support of an award of damages, pursuant to Fed. R. Civ. P. 55, based upon defendants' default and non-appearance in this case.

As set forth in the Amended Complaint (the "Complaint") in this action (which is annexed as Exh. A to the von Hassell Affidavit submitted herewith), plaintiff seeks to recover damages resulting from defendants' breaches of their obligations and fraud in connection with a written book publishing agreement (the "Publishing Agreement"), dated as of May 8, 2006,

1

between plaintiff and defendant University Press of the South, Inc. ("UNPS"). Defendant Alain Saint-Saens ("Saint-Saens") is the President of UNPS. The Publishing Agreement required UNPS to sell, market and promote plaintiff's book. The book, *Military High Life: Elegant Food, Histories and Recipes*, authored by plaintiff with the assistance of other contributors, is a photo book about food in the military. It was published after years of work and hundreds of thousands of dollars of personal investment by plaintiff. As alleged in the Complaint, defendants undertook virtually no efforts to sell, promote or market the book. As a result, plaintiff seeks damages of, at a minimum, $350,000, plus costs and attorneys' fees. These damages consist of defendants' out-of-pocket costs of more than $200,000 and expected royalties during the five-year duration of the Publishing Agreement, of at least $195,000 and as much as $261,000.

## FACTS

The facts are fully set forth in the accompanying von Hassell Affidavit, and affidavit by Alexander Hoyt (the "Hoyt Aff."), an expert on publishing and book sales, which are incorporated by reference, and will only be briefly summarized herein. The facts as to defendants' default are set forth in two Declarations of Donald E. Watnick, Esq., dated August 14, 2007 (the "Watnick Dec. I") and September 6, 2007 (the "Watnick Dec. II") (collectively, the "Watnick Declarations"), which were previously filed with the Court and are being re-submitted with this Memorandum of Law as Exhs. B and C respectfully to the Declaration of Donald E. Watnick dated April 1, 2008.[1] Jurisdiction in this case is based upon diversity of citizenship (Complaint, ¶¶2-6). As alleged in the Complaint, von Hassell is a domicile of Virginia, and

---

[1] As set forth therein, defendant UNPS, a Louisiana Corporation, was served on July 5, 2007 through the Secretary of State of Louisiana in accordance with Fed.R.Civ.P. 4(b) and 4(e). (Watnick Dec. I, ¶¶5-6 and Exh. B.) In addition, as set forth therein, defendant Saint-Saens was served pursuant to Fed.R.Civ.P.4(e), on July 16, 2007 and July 30, 2007. (Watnick Dec. II, ¶¶5-6 and Exh. B.)

defendants are both domiciles of Louisiana, where there principal places of business are, as well. (Id.)

As described in a 2006 review in *The Wall Street* Journal, the Book is a "coffee-table volume" that is intended to be a tour of military kitchens and officers' messes over the years, and "includes 141 beautiful color illustrations and 73 interesting recipes." (Complaint, ¶ 10.) von Hassell, who was a captain in the U.S. Marine Corps, and is an experienced author and photojournalist, created and is the lead author of the Book. (von Hassell Aff., ¶¶9-13.)

On or about May 8, 2006, plaintiff and UNPS executed the Publishing Agreement for the Book. (von Hassell Aff., Exh. B to Exh. A.) Prior to executing the Agreement, defendants made numerous misrepresentations of fact to plaintiff to induce him to sign the Agreement, including that UNPS was a full service publisher and that it had the infrastructure to sell and promote the Book. (Complaint, ¶¶ 21-27; von Hassell Aff., ¶ 4.)

The Publishing Agreement required UNPS to market, sell and promote the Book in the United States and Europe, and to work with plaintiff to promote and market the Book. (von Hassell Aff., Exh. B to Exh. A.) The Publishing Agreement had a minimum term of five years and nine months[2], and provided that UNPS would have the exclusive right to the distribute Book throughout the world. (Id.)

Under the Publishing Agreement, plaintiff agreed to pay the costs for production and printing of the Book, along with additional fees totaling at least $2,000 to UNPS. (von Hassell Aff., Exh. B to Exh. A, at IV-V.) The Publishing Agreement entitled plaintiff to a royalty of 50% of the net cash receipts. (Id., ¶ VIII.) Under the Publishing Agreement, UNPS was to

---

[2] The Publishing Agreement stated that it would terminate if "five(5) years after publication date the work is out of print and within nine (9) months after written demand by the author the publisher does not bring out a new printing. . ." (von Hassell Aff., Exh. B to Exh. A at ¶ XI.)

3

provide timely sales reports to Plaintiff. (Id.) The Publishing Agreement contained a Louisiana choice-of-law clause. (Id., ¶ XIII.)

Plaintiff paid all costs of production of the Book, including for the initial printing of 5,000 copies of the Book and the costs of shipping those copies to UNPS from Hong Kong, where the Publishing Agreement provided the Book was to be printed, to New Orleans where UNPS was located. (These costs are fully detailed in paragraph 20 of the von Hassell Affidavit and the chart attached thereto as Exh. C.) Plaintiff fully performed the Publishing Agreement. (von Hassell Aff., ¶ 6; Complaint, ¶ 28.))

UNPS failed to perform the Agreement and repudiated its obligations to do so. It made virtually no efforts to sell or promote the Book. (Complaint, ¶¶ 31-37; von Hassell Aff., ¶¶ 3-8, 16, 22.) UNPS refused to work with plaintiff to sell and promote the Book, and never provided sales reports as required by the Publishing Agreement. (von Hassell Aff., ¶¶ 3,6.) In fact, UNPS told plaintiff that it would not undertake any of its contractual obligations unless plaintiff paid UNPS an additional $30,000. (Complaint, ¶ 36; von Hassell Aff., ¶6.)

Plaintiff has sustained substantial damages due to defendants' breaches. Plaintiff's out-of-pocket investment of more than $230,000 is lost and, due to defendants' failure to sell and market the Book, Plaintiff has no chance to recoup this substantial amount. (von Hassell Aff., ¶¶ 20-24.) During the five plus year term of the Publishing Agreement, plaintiff expected that the first printing of 5,000 copies would be sold, and additional printings and/or new editions would have resulted in sales of at least 10,000 additional sales. (Id., ¶¶ 22-23.) As set forth in the Hoyt and von Hassell Affidavits, such sales, at the Book's existing list price of $34.95 per copy, would have easily generated more than $195,000 in royalties for plaintiff, presuming 15,000 copies were sold over five years, and more than $261,000 presuming 20,000 copies were sold

4

over five years. (Id. and Hoyt Aff., ¶¶ 12-14.) Significantly, prior to plaintiff's execution of the Publishing Agreement, defendants' represented to plaintiff that the Book would generate at least $150,000 in royalties for plaintiff. (on Hassell Aff., ¶ 23; Complaint, ¶25.)

However, due to defendants breaches of their duties to use commercially reasonable efforts to sell the Book, and defendants having complete control over the 5,000 copies of the Book and any sales or licensing of the Book, plaintiff has no way of receiving value for his substantial time investment. (von Hassell Aff., ¶¶ 7, 24.) Moreover, as UNPS was given the right to distribute and license the Book worldwide, plaintiff cannot re-print the Book with another publisher or issue new editions. (Id.) Equally important is that the publication and sale of the Book was part of an effort by plaintiff to build his profile in the food industry, as both as author and commentator. (von Hassell Aff., ¶¶ 9-13, 25.) Plaintiff planned to use the Book to create new business opportunities for himself as a speaker and commentator about food and food and the military. (Id.) However, due to defendants' breaches as set forth in the Complaint, plaintiff has been unable to use the Book to launch these business endeavors.

## ARGUMENT

I. **PLAINTIFF HAS VALIDLY ALLEGED EACH OF ITS CLAIMS IN THE COMPLAINT**

Where, as here, a defendant has defaulted in answering the Complaint[3], plaintiff's "well-pleaded allegations concerning issues other than damages must be accepted as true." Sony Music Entertainment Inc. v. Pedestal Productions, Inc., 2002 WL 1226861 at * 1 (S.D.N.Y. 2002) (Maas, M.J.). Nor can there be any question that plaintiff here has validly alleged the

---

[3] As noted, the facts and circumstances of both defendants' defaults are set forth in the Watnick Declarations that accompany this Memorandum of Law, which are annexed as Exhs. B and C to the Watnick Declaration accompanying this Memorandum of Law.

necessary elements of each of its claims for breach of contract and breach of the duty of good faith against UNPS and fraud and detrimental reliance against both defendants.

To state a claim for breach of contract, under Louisiana law which the Publishing Agreement states is applicable, a plaintiff must allege the existence of a contract and breaches of that agreement. See., e.g., Bespress, Inc. v. Capital Bank of Delhi, 616 So.2d 795 (La. Ct. of Appeal 1993). This is consistent with the elements for a valid claim for breach of contract under New York law. Harsco v. Sequi, 91 F.3d 337, 348 (2d Cir. 1996) ("To state a claim in federal court for breach of contract under New York law, a complaint need only allege (1) the existence of an agreement, (2) adequate performance of the contract by the plaintiff, (3) breach of contract by the defendant, and (4) damages") (citations omitted).)

Here, there can be no question that plaintiff has alleged a claim for breach of contract. The Complaint alleges that the Publishing Agreement was executed by plaintiff and UNPS, and details UNPS' breaches in failing (i) to sell, promote and market the Book, (ii) to work with plaintiff in promoting and marketing the Book and (iii) provide plaintiff with required sales data.

To state a claim for fraud, plaintiff must allege a material misrepresentation of fact made with knowledge of its falsity with the intent to deceive, which was justifiably relied upon by plaintiff to his detriment. See, e.g., Lamma Holdings v. Smith Barney, Inc., 88 N.Y.2d 413, 421, 646 N.Y.S.2d 76 (1996); Kupersmith v. Winged Foot Golf Club, Inc., 2005 WL 2847289 at *5 (N.Y. State Sup. Ct. Westchester Co. 2005). Under Louisiana law, a claim of fraud necessitates pleading similar elements – a material misrepresentation, made with intent, that deceives a party to enter a contract, and which causes harm. See, e.g., Systems Engineering and Sec., Inc. v. Science & Engineering Associations, Inc., 962 So.2d 1089 (La. App. Cir. 2007); McPhail v. Louisiana Farm Bureau Rice, Inc., 419 So.2d 977 (La. App. Cir.1982). While a party may not

predicate a fraud claim on mere allegations of intent not to perform an agreement, a fraud claim is cognizable where it is based upon an allegation of false intention at the time of a contract, or where the breaching party made collateral or extraneous representations that induced the non-breaching party to enter the contract. See, e.g., PI, Inc. v. Quality Products, 907 F. Supp. 752 (S.D.N.Y. 1995).

In the Complaint, plaintiff alleges material misrepresentations of fact by both defendants upon which it relied in entering into the Publishing Agreement. These include that UNPS was a full service publisher and book distributor, with the infrastructure to sell, market, promote and distribute the Book, and that UNPS had an affiliate in Europe to sell the Book there. (Complaint, ¶¶ 21-22.) Plaintiff alleges that these collateral representations, which were extraneous to the Agreement, were false, and that they prompted plaintiff to enter into the Publishing Agreement. (Id., ¶¶ 21-27, 48-57.)

To state a claim for detrimental reliance (id., ¶¶58-67), a party must allege the existence of a promise, which the party making the promise knew or should have known would induce the other party to reasonably rely to its detriment. See Louisiana Civil Code Art. 1967 ("A party may be obligated by a promise when he knew or should have known that the promise would induce the other party to rely on it to his detriment and the other party was reasonable in so relying.")

Under Louisiana law, the duty of good faith to perform a contract is codified by statute and requires subjective good faith in performing a contract. La Civ. Code Ann. Art. 1795; see also Brill v. Catfish Saks of America, Inc., 727 F. Supp. 1035, 1039-41 (E.D. La. 1989). Under New York law, implicit in every contract is a covenant of good faith and fair dealing that prevents a contracting party from acting to destroy the rights of the other party to receive the

benefit of the contract. <u>Dalton v. Educational Testing Service</u>, 87 N.Y.2d 384, 389, 639 N.Y.S.2d 977, 979 (1995); <u>see also</u> 511 West 232nd Owners Corp., 98 N.Y.2d 144, 153, 746 N.Y.S.2d 131, 135 (2002); (the duty of good faith "embraces a pledge that 'neither party shall do anything which will have the effect of destroying or injuring the right of the other party to receive the fruits of the contract'") (citations omitted).

Accordingly, the allegations in the Complaint that UNPS refused to undertake any efforts to sell, market or promote the Book, and the allegations that post-execution of the Publishing Agreement it refused to do so if plaintiff refused to pay an additional $30,000, state claims that UNPS violated its duty of good faith under both Louisiana and New York law.

## II. PLAINTIFF IS ENTITLED TO RECOVER HIS ACTUAL PECUNIARY LOSS AND LOST PROFITS

### A. Plaintiff is Entitled to Recover Its Out-of-Pocket Loss for Breach of Contract

Under both New York and Louisiana law, plaintiff is entitled to recover as damages for both his breach of contract and fraud causes of action based upon his actual out-of-pocket losses relating to the Book.

With respect to his breach of contract cause of action, under Louisiana law, a plaintiff is entitled to recover its out-of-pocket losses as a measure of damages. <u>Meador v. Toyota of Jefferson, Inc.</u>, 332 So.2d 433, 434-35 (La. 1976) (holding that "recovery for damages upon the breach of a contract is limited to the loss a person has sustained or the profit of which he has been deprived."); <u>Campbell v. LeLong Trust</u>, 327 So.2d 533, 536 (La. Ct. of App. 1976) ("In a breach of contract action, the plaintiff is entitled to recover the amount of loss he has sustained and the profit of which he has been deprived. LSA-C.C. art 1934."); <u>Turner v. Watson</u>, 912 So.2d 391, 394 (La. Ct. of App. 2005) (upholding award of out-of-pocket losses as damages in breach of contract case.); <u>Priority E.M.S. v. Crescent City E.M.S.</u>, 829 So.2d 1066, 1076 (La.

8

App. Cir. 2002) (damages for breach of contract include loss sustained by the obligee and profit of which he has been deprived).

Under New York law, a plaintiff similarly is entitled to recover its out-of-pocket losses where, as here, a defendant breaches a contract, and courts have recognized a plaintiff is entitled to such damages where, as here, the publisher breaches an agreement to publish, market and promote a book. Under New York law, and pursuant to the UCC Sec. 2-715(1), a plaintiff is entitled to the reasonable out-of-pocket costs and consequential losses incurred as a result of defendant's breach. Harbor Hill Lithographing Corp. v. Dittler Brothers, Inc., 76 Misc.2d 145, 348 N.Y.S.2d 920 (1973). Similarly, courts recognized that the purpose of a damage award for breach of contract is to put a plaintiff in the same position that it would have been in if not for the breach. DVCi Technologies, Inc. v. Timesquaremedia.com, Inc., 2000 WL 33159189 (S.D.N.Y. 2000) ("Damages for breach of contract are determined by calculating the 'amount necessary to put the plaintiff in the same economic position he would have been in had the defendant fulfilled his contract.'") (quoting Adams v. Lindblad Travel, Inc., 730 F.2d 89, 92 (2d Cir.1984)).

Moreover, it is well settled that on a claim of fraud "the proper measure of damages is plaintiff's actual pecuniary loss as a result of the fraud, or what is known as the 'out of pocket rule.'" Kaddo v. King Service Inc., 260 AD.2d 948, 673 N.Y.S.2d 235 (3d Dep't 1998). See also Lamma Holdings, 88 N.Y.2d 413, 421-22, 646 N.Y.S.2d 76. Put another way, damages are to be calculated to compensate a party for what it lost because of the fraud, not what it would have gained if not for the fraud.

Similarly, under Louisiana law, the damages for an "obligor's failure to perform . . . 'are measured by the loss sustained by the obligee and the profit of which he has been deprived.'"

9

Priority E.M.S., 829 So.2d at 1075-76 (quoting La. Civ. Code Art. 1995).  In addition, under Louisiana law, a party who is damaged by "fraud in the confection of the contract" may recover attorneys' fees under La. Civ. Code Art. 1958.  Id.

Here, there can be no question that plaintiff suffered substantial out-of-pocket losses, totaling $233,764.67, due to defendant's failure to perform the Publishing Agreement and, for all intents and purposes, repudiation of its obligations under the Publishing Agreement.  These out-of-pocket loss are fully detailed in the von Hassell Affidavit at paragraph 20, and include payments by plaintiff to contributors to the Book, printing, shipping, promotion, editorial and design services and other expenses relating to production of the Book.  As a consequence of defendant's breach of the Publishing Agreement, plaintiff also incurred approximately $14,000 in legal costs to an attorney who attempted to resolve performance issues with defendants and negotiate a new agreement.  (von Hassell Aff., ¶ 20(g).)

B.  Plaintiff Is Entitled to Recover Lost Profits

Under Louisiana law, damages for breach of contract also include lost profits.  Two Louisiana statutes are directly on point.  First, Louisiana Civ. Code Art. 1994, which is entitled "Obligor liable for failure to perform," expressly states:

> An obligor is liable for the damages caused by his failure to perform a conventional obligation.
> A failure to perform results from nonperformance, defective performance, or delay in performance.

Second, Louisiana Civ. Code Art. 1995, which is entitled "Measure of Damages," expressly states: "Damages are measured by the loss sustained by the obligee and the profit of which he has been deprived."  Louisiana courts, in reliance on these code sections, have held that damages for breach of contract include lost profits.  See Priority E.M.S., 829 So.2d at 1076.

Here, as set forth in the von Hassell Affidavit and Hoyt Affidavits, the Publishing Agreement has resulted in substantial lost profits because its duration is more than five years, and because the Agreement grants UNPS all rights to distribution and licensing of the Book, von Hassell, has no way of selling the Book without UNPS. Compounding these losses is that von Hassell is unable to issue subsequent editions of the Book or use the Book as a platform to launch related business ventures as a commentator in the areas of food and military history. (von Hassell Aff., ¶¶ 7, 24.)

Both von Hassell and Hoyt state in their affidavits that the first printing of 5,000 copies of the Book would have generated, at a minimum, $65,000 dollars in royalties to von Hassell. (von Hassell ¶ 23; Hoyt Aff., ¶ 12.) Further, due to von Hassell's reputation and high profile as a retired U.S. Marine Corps Captain and as a successful author, there would have been subsequent printings and/or editions of the Book. (von Hassell Aff., ¶ 22-23; Hoyt Aff., ¶¶6-8.) Both von Hassell and Hoyt state that, at a minimum, there would have been an additional 10,000 copies of the Book printed and sold. (von Hassell Aff., ¶ 23; Hoyt Aff., ¶ 12-14.) These minimum amounts of sales would have resulted in an additional $130,000 in royalties for von Hassell. Additional sales or a higher price for the Book would have resulted in still additional royalties, and, as set forth in the von Hassell Affidavit, additional sales of an additional 5,000 copies over the five-year term of the Agreement were reasonably expected. (Id.) Thus, von Hassell estimates that his royalties form the Book would have totaled at least $261,000.

None of the contemplated subsequent printings or editions is now possible due to UNPS's failure to market, promote and sell the Book, and plaintiff's inability to do so because UNPS holds the copyright for the Book. Therefore, defendant UNPS' breach of contract has rendered plaintiff's out-of-pocket investment in the Book a complete loss.

B.  Plaintiff is Entitled to Recover Damages Resulting
    for Nonperformance Due to Defendant UNPS' Bad Faith

With respect to plaintiff's claim for breach of the duty of good faith, Louisiana statutory law further provides that, in addition to damages resulting from the alleged breaches, plaintiff can recover other all damages, "'foreseeable or not, that are a direct consequence of [defendant's] failure to perform.'" Priority E.M.S., 829 So. 2d at 1076 (quoting La. Civ. Code Art. 1997). Accordingly, La. Civ. Code Art. 1997 gives rise to an independent basis for plaintiff to recover the same amounts set forth in Point A with respect to pecuniary loss and lost profits.

## CONCLUSION

For all of the reasons set forth herein, plaintiff Christina Augustin von Hassell a/k/a Agostino von Hassell should be awarded as damages his out-of-pocket loss in the amount of $233,289.44, his lost profits in the minimum amount of $196,573.75 to $261,000, plus costs in and attorneys' fees in an amount determined by inquest or as otherwise determined by the Court, along with such other relief that this Court deems just and proper.

Dated: New York, New York
       April 1, 2008

                                    LAW OFFICES OF DONALD WATNICK

                                    By: _DalEWctw_____
                                         Donald E. Watnick (DW 6019)

                                    292 Madison Avenue
                                    17th Floor
                                    New York, New York 10017
                                    (212) 213-6886
                                    *Attorneys for Plaintiff Christian Augustin von*
                                    *Hassell a/k/a Agostino von Hassell*

12