UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------x

| | |
|---|---|
| CHRISTIAN AUGUSTIN VON HASSELL, a/k/a AGOSTINO VON HASSELL, : <br><br> Plaintiff, : <br><br> - against - : <br><br> ALAIN SAINT-SAENS and UNIVERSITY PRESS OF THE SOUTH, INC., : <br><br> Defendants. : | **REPORT AND RECOMMENDATION TO THE HONORABLE LEWIS A. KAPLAN** <br><br> 07 Civ. 3477 (LAK)(FM) |

------------------------------------------------------------x

**FRANK MAAS,** United States Magistrate Judge.

I.   Introduction

In this action, plaintiff Christian Augustin von Hassell ("von Hassell") alleges that the University Press of the South ("UNPS") and its president, Alain Saint-Saens ("Saint-Saens") (together, the "Defendants"), fraudulently induced him to enter into an agreement ("Agreement") regarding the publication and distribution of Military Highlife:  Elegant Food, Histories and Recipes ("Military Highlife" or the "Book"), a book written by von Hassell and a team of contributors.  Von Hassell further claims that the Defendants later breached the Agreement by failing to market the Book in accordance with its terms.

On September 5, 2007, Your Honor granted von Hassell's motion for a default judgment against defendant UNPS. (Docket No. 9). Thereafter, on January 3, 2008, Your Honor granted von Hassell's motion for a default judgment against codefendant Saint-Saens and directed me to conduct an inquest regarding the damages, if any, to be awarded to von Hassell. (See Docket Nos. 12-13). By order dated January 15, 2008, I directed von Hassell to serve and file his inquest papers by March 17, 2008, and the Defendants to respond by March 31, 2008. (See Docket No. 14). Those dates subsequently were extended to April 1 and 15, 2008, respectively, at von Hassell's request. (Docket No. 15). Although von Hassell's papers were timely filed, (see Docket Nos. 20-23), the Defendants have not submitted any opposition papers or otherwise contacted the Court.

For the reasons set forth below, I recommend that von Hassell be awarded judgment against UNPS in the amount of $131,933.07 plus costs in the amount of $350, and prejudgment interest on this amount at the rate of 9.5 percent per annum from May 1, 2007, to December 31, 2007, and at the rate of 8.5 per annum from January 1, 2008, through the date judgment is entered.

II.   Standard of Review

In light of the Defendants' default, von Hassell's well-pleaded allegations concerning issues other than damages must be accepted as true. See Cotton v. Slone, 4 F.3d 176, 181 (2d Cir. 1993); Greyhound Exhibitgroup, Inc. v. E.L.U.L. Realty Corp.,

973 F.2d 155, 158 (2d Cir. 1992); Time Warner Cable of N.Y.C. v. Barnes, 13 F. Supp. 2d 543, 547 (S.D.N.Y. 1998).

Additionally, although a plaintiff seeking to recover damages against a defaulting defendant must prove its claim through the submission of evidence, the Court need not hold a hearing as long as it has (i) determined the proper rule for calculating damages on the claim, see Credit Lyonnais Secs. (USA), Inc. v. Alcantara, 183 F.3d 151, 155 (2d Cir. 1999), and (ii) the plaintiff's evidence establishes, with reasonable certainty, the basis for the damages specified in the default judgment, see Transatlantic Marine Claims Agency, Inc. v. Ace Shipping Corp., 109 F.3d 105, 111 (2d Cir. 1997).  Here, I have been able to determine von Hassell's damages based on his papers.  There consequently is no need for a hearing.

III.   Facts

The unrefuted allegations in von Hassell's complaint, together with his inquest papers, establish as follows:

A.   Jurisdiction and Venue

Von Hassell is a New York resident domiciled in Virginia.  (Compl. ¶ 2). UNPS is a corporation organized under the laws of the State of Louisiana with its principal place of business there.  (Id. ¶ 3).  Saint-Saens is a citizen of the State of Louisiana.  (Id. ¶ 4).  The amount in controversy in this action exceeds $75,000.  (Id. ¶ 5). The Court therefore has jurisdiction over this matter pursuant to 28 U.S.C. § 1332.

Additionally, venue in this District is proper under 28 U.S.C. § 1391(a) because a substantial part of the events and omissions giving rise to von Hassell's claims occurred here. (Id. ¶ 7).

B.  Background

Von Hassell is a retired United States Marine Corps captain who has written several books about the military. (Id. ¶ 11). Between 2001 and 2006, he and several other contributors wrote Military Highlife, which is "the first illustrated history of international fine military dining." (Aff. of Christian Augustin von Hassell, dated Apr. 1, 2008 ("von Hassell Aff."), ¶¶ 9-10 & Ex. Y). Von Hassell evidently has copyrighted Military Highlife. (Id. Ex. Y).

The Defendants falsely represented to von Hassell that UNPS was a "full service publisher and book distributor" which could accept orders via its telephone system or website and which had the facilities to store and ship substantial quantities of the Book. (See Compl. ¶ 21). The Defendants further falsely represented that they and their European affiliate had the experience needed to develop a promotional plan for Military Highlife – including listing the Book on Amazon.com and other websites – which would enable von Hassell to earn at least $150,000 in royalties. (Id. ¶¶ 22-25).

On May 8, 2006, based on these representations, von Hassell and UNPS executed the Agreement, which granted UNPS the "sole and exclusive right to . . . print, publish and sell" Military Highlife in the English language "throughout the world," as

4

well as the "exclusive, unlimited right to license or to permit others to publish, reproduce or provide the [Book] . . . in any and all forms." (Id. ¶ 13 & Ex. B §§ 2.3-2.4). The Agreement required von Hassell and UNPS to "make every attempt" to complete production of the Book so that it could be sold during the fall 2006 holiday season, and UNPS to promote it in a manner "best suited to its sale." (Id. Ex. B §§ 4.1, VI). The Agreement also provided that Louisiana law would control. (Id. Ex. B. § XIII).

It appears that the services UNPS was to provide were akin to those commonly offered by vanity publishers since the Agreement obligated von Hassell to pay a $500 non-refundable signing fee, an additional non-refundable $2,000 as his "contribution" to the cost of publication, and all printing costs for the first and any successive printings of the Book. (Decl. of Donald E. Watnick, Esq., dated Apr. 1, 2008 ("Watnick Decl."), Ex. A (Addendum) §§ I, II). In return for the obligations that von Hassell assumed, UNPS agreed to pay him a royalty of fifty percent of its net cash receipts from sales and to provide detailed sales reports in a "timely manner" every two months. (Compl. Ex. B. §§ 10.2, 10.8). The Agreement further provided that "[a]ny printings after the second printing shall be produced at the sole discretion of [UNPS]." (Watnick Decl. Ex. A § 2.2).

Von Hassell paid UNPS the initial $2,500 required by the Agreement and delivered 5,000 copies of Military Highlife to UNPS. (Compl. ¶ 28). UNPS, however, made limited, if any, efforts to promote, market, sell, or distribute the Book. (Id. ¶¶ 31-32). Worse yet, when bookstores and other potential purchasers of the Book sought to

contact UNPS, they could not because UNPS lacked a "web-based sales system" and "fully functional telephone lines." (Id. ¶ 33). The Defendants also failed to disburse royalties to von Hassell or allow him to inspect UNPS's sales records. (Id. ¶ 34).

Eventually, when von Hassell demanded that UNPS fulfill its obligations under the Agreement, the Defendants demanded the payment of "as much as an additional $30,000 before they would comply." (Id. ¶ 36). Von Hassell then commenced this action.

IV.  Discussion

Von Hassell seeks to recover damages on the theories that UNPS is liable to him for breach of contract and breach of its duty of good faith and fair dealing, and that both UNPS and Saint-Saens are liable to him for fraud and detrimental reliance.

   A.  Breach of Contract

To state a claim for breach of contract under Louisiana law, a plaintiff must allege the existence of a valid contract and action by the defendant that violates the terms of that contract. See, e.g., Bespress, Inc. v. Capital Bank of Delhi, 616 So. 2d 795, 798 (La. Ct. App. 1993); see also Mayes v. Office Depot, Inc., 292 F. Supp. 2d 878, 895 (W.D. La. 2003) (the four elements of a valid contract in Louisiana are (1) parties with capacity, (2) free, mutual consent, (3) cause for the obligation, and (4) lawful purpose). Here, von Hassell gave UNPS the sole and exclusive right to sell Military Highlife pursuant to an Agreement which required UNPS to promote the book to the best of its ability in exchange for shared profits. (Compl. ¶¶ 13-17). Thereafter, rather than

6

complying with its contractual obligations, UNPS breached the Agreement by failing to market, promote, or distribute the Book. (Id. ¶¶ 31-32). In direct contravention of the terms of the Agreement, UNPS also failed to permit von Hassell to review its sales records for the Book. (Id. ¶ 34). These allegations suffice to make out a breach of contract claim under Louisiana law.

        Louisiana law provides that a plaintiff who establishes a breach of contract is entitled to recover damages for the losses he sustained and the profits of which he has been deprived. La. Civ. Code Ann. art. 1995. In addition, a defendant that has acted in bad faith is liable for "all the damages, foreseeable or not, that are a direct consequence of [its] failure to perform." Id. art. 1997. The court has considerable discretion in assessing these damages. Id. art. 1999.

        Although the Complaint alleges that von Hassell incurred approximately $100,000 in out-of-pocket losses due to UNPS's breach, (Compl. ¶ 12), his inquest affidavit seeks to recover $233,289.44, more than double that amount, (see von Hassell Aff. ¶¶ 20-21 & Ex. C). Many of these expenses, however, were incurred years before von Hassell entered into the Agreement with UNPS. (See, e.g., id. ¶ 19 (referring to damages "during the period from 2002 to 2008")). Included among these pre-Agreement expenses are payments to photographers, editors, designers, and culinary contributors. (Id. ¶ 20 & Ex. C). To the extent that von Hassell incurred expenses prior to entering into the Agreement, his losses are not recoverable on a breach of contract theory. See, e.g.,

Dorsett v. Johnson, 786 So. 2d 897, 901 (La. Ct. App. 2001) (expenses that would have been incurred regardless of defendant's contract breach are not recoverable).

Von Hassell properly may recover the following out-of-pocket expenses:

- the costs of printing 5,000 copies of Military Highlife ($27,430) and shipping them from Asia to UNPS ($7,130.17), (von Hassell Aff. ¶ 20(f), (i) & Exs. J, M);

- payments made to UNPS, totaling $3,430, (id. ¶ 20(j) & Ex. N);

- legal fees paid to Robert N. Solomon, Esq., in connection with the negotiation of the Agreement, totaling $14,420.50, (id. ¶ 20(g) & Ex. K); and

- miscellaneous expenses incurred in 2006 and 2007, totaling $9,522.40, (id. ¶ 20(s), (t) & Exs. W-X).

The total of these expenses is $61,933.07.

Many of the other expenditures for which von Hassell seeks reimbursement span periods of time both before and after he entered into the Agreement. (See id. ¶ 20(a) & Ex. D (payments totaling $11,394.38 to an editor from February 2003 to December 2007), 20(d) & Ex. H (payments totaling $13,151.16 to a designer from 2003 to 2007), 20(h) & Ex. L (payments totaling $16,141.71 to a photographer from 2002 to 2007)). Other payments, although made after the Agreement was executed in May 2006, may have been for services previously rendered. Having reviewed the backup for both these categories of additional expenses, I recommend that von Hassell be awarded $5,000 to compensate him to the extent that these expenses were incurred after his entry into the Agreement.

Turning to lost profits, von Hassell has provided the Court with the affidavit of Alexander Hoyt, an independent literary agent with thirty years of experience in the publishing industry. (See Aff. of Alexander Hoyt, dated Apr. 1, 2008, ¶¶ 1-4). In his affidavit, Mr. Hoyt opines that the Book was sufficiently appealing and well reviewed that it would have sold out a first printing of 5,000 copies at "the relatively low price of . . . $34.95 per copy." (Id. ¶¶ 6, 9). Apparently ignoring the contractual provision that gave UNPS the absolute right to decide whether there would be any printings after the second printing, Mr. Hoyt further suggests that demand would have been sufficient to result in the sale of "an additional 10,000 copies of the book, if not more." (Id. ¶ 10). He concludes that von Hassell's net royalty would have been $65,631 for every 5,000 copies sold. (Id. ¶ 12). On the assumption that 15,000 copies of the Book would have been sold – an estimate that Mr. Hoyt characterizes as "reasonable and conservative" – he concludes that von Hassell would have earned total royalties of approximately $195,000 through sales of the Book. (Id. ¶ 13).

Louisiana law, like New York law, provides that contract damages "need only be proven within a reasonable certainty," but "may not be based on speculation or conjecture." Meter Reading Specialists, Inc. v. City of Denham Springs, 873 So. 2d 725, 728 (La. Ct. App. 2004); see Freund v. Wash. Square Press, Inc., 34 N.Y.2d 379, 382-83 (1974) (awarding only nominal damages because the plaintiff "provided no stable foundation for a reasonable estimate of royalties he would have earned had defendant not

9

breached its promise to publish"). Here, neither Mr. Hoyt nor von Hassell has provided any information concerning the past success of von Hassell's books, cookbooks in general, or specialty cookbooks such as Military Highlife. Nor has the Court been provided with any indication as to the level of demand from bookstores and other purchasers that UNPS allegedly failed to fulfill. Indeed, the only evidence before the Court with regard to the level of royalties that von Hassell might reasonably expect is the Defendants' alleged assurance to him that "the Book would generate at least $150,000 in royalties." (See Compl. ¶ 25). While this is admittedly some evidence of the level of sales that the Book might generate, see Fed. R. Evid. 804(b)(3), it could also constitute mere puffery. In short, although von Hassell's evidence of lost royalties is uncontradicted, it also is weak. Given the limited evidence that von Hassell has adduced, the Court could reasonably recommend that von Hassell not be awarded any lost profits as a consequence of UNPS's contract breach. Nevertheless, it is reasonable to infer that von Hassell, who is an experienced author, would not have invested in Military Highlife had he not reasonably expected some compensation for his efforts. I therefore recommend that he be awarded royalties for the first printing of the Book in the amount of $65,000.

    B.    Breach of Duty of Good Faith and Fair Dealing

        Every contract made under Louisiana law contains an implied covenant of good faith and fair dealing. See Clark v. Am.'s Favorite Chicken Co., 110 F.3d 295, 297 (5th Cir. 1997); Domed Stadium Hotel, Inc. v. Holiday Inns, Inc., 732 F.2d 480, 484-85

(5th Cir. 1984); Popeyes, Inc. v. Tokita, Civ. A. Nos. 87-3011, 90-1179, 1993 WL 386260, at *5 (E.D. La. Sept. 21, 1993).  However, "[a] mere failure to fulfill an obligation, without a showing of intent or ill will, does not constitute a breach of good faith."  Brill v. Catfish Shaks of Am., 727 F. Supp. 1035, 1041 (E.D. La. 1989).  To prevail on his claim of breach of good faith and fair dealing, von Hassell therefore must show that UNPS's "actions were prompted by fraud, ill will or sinister motivation."  Spillway Invs., LLC v. Pilot Travel Ctrs. LLC, No. Civ. A. 04-2451, 2005 WL 517498, at *8 (E.D. La. Feb. 22, 2005).

In his second cause of action, von Hassell seeks to meet this threshold by alleging that UNPS engaged in "deceptive and dishonest acts, including refusing to communicate with [him] . . . and making false and inaccurate statements about its efforts to sell, market, promote and distribute the Book." (Compl. ¶ 46).  Von Hassell also notes that UNPS attempted to force him to pay an extra $30,000 not required by the terms of the Agreement.  (Id. ¶ 45). Evidently concerned that these allegations might not be sufficient to establish his second cause of action, von Hassell has twice sought to supplement them.  First, von Hassell sent the Court an email from defendant Saint-Saens, dated April 15, 2008, in which he urges von Hassell to abandon this lawsuit and threatens that he will ensure that no reputable publisher will do business with von Hassell in the future if he fails to comply.  (See letter from Donald E. Watnick, Esq., to the Court, dated Apr. 22, 2008 (Attach.)).  Second, von Hassell has submitted an email, dated May 8, 2008, in

11

which Saint-Saens notes that UNPS is considering selling approximately 4,000 copies of Military Highlife for $1,000, or $0.25 per Book. (See letter from Donald E. Watnick, Esq., to the Court, dated May 8, 2008, at 2 & Attach.). Based principally on the second email, von Hassell seeks an award of punitive damages. (Id.).

        Von Hassell's request for punitive damages faces two insurmountable obstacles. First, von Hassell's complaint sought an award of at least $200,000 plus attorney's fees and costs, but made no mention of punitive damages. (See Compl. at 12-13). His further formulaic demand for "such other relief as this Court deems just and equitable," did not provide the Defendants with adequate notice that he might seek punitive damages in the event of a default. Von Hassell therefore cannot seek damages different in kind than those sought in his prayer for relief. See Silge v. Merz, 510 F.3d 157, 160 (2d Cir. 2007). Second, and more fundamentally, even if the complaint had specifically sought punitive damages, Louisiana law treats an award of punitive damages as an impermissible double recovery unless a statute expressly authorizes them. Gagnard v. Baldridge, 612 So. 2d 732, 736 (La. 1993). In his papers, von Hassell has not cited, nor am I aware of, any statute which would entitle him to such relief under the circumstances of this case.

        Accordingly, von Hassell may recover only consequential damages for UNPS's breach of the implied covenant of good faith and fair dealing. La. Civ. Code Ann. art. 1997; Industrias Magromer Cueros y Pieles S.A. v. La. Bayou Furs Inc., 293

F.3d 912, 922 (5th Cir. 2002). Here, those damages have previously been determined in connection with von Hassell's contract claim. The inclusion of his second cause of action therefore entitles him to no further relief.

    C.    <u>Fraud</u>

To state a claim for fraud in the inducement in Louisiana, a plaintiff must show: (a) a misrepresentation or omission of true information; (b) intent to obtain an unjust advantage over or cause damage to another; (c) the victim's substantial reliance on the misrepresentation in entering the contract; and (d) actual damages. See <u>Shelton v. Standard/700 Assocs.</u>, 798 So. 2d 60, 64 (La. 2001); <u>Sun Drilling Prods. Corp. v. Rayborn</u>, 798 So. 2d 1141, 1152-53 (La. Ct. App. 2001). In this case, the Defendants made material misrepresentations to von Hassell regarding, among other things, UNPS's ability to promote and distribute <u>Military Highlife</u> and accept and ship orders. (Compl. ¶¶ 21, 23, 26, 49-51). It further is clear that the Defendants made these misrepresentations with the intent that von Hassell rely on them, and that he would not have executed the Agreement had he known the truth. (<u>Id.</u> ¶¶ 53-55). Finally, as a result of his entry into the Agreement, von Hassell unquestionably lost money. He thus has established his fraud claim.

When a contract is procured by fraud, Louisiana law affords the party against whom rescission is granted the right to recover "damages and attorney fees." See La. Civ. Code Ann. art. 1958; <u>Scottsdale Ins. Co. v. Dorman</u>, 153 F. Supp. 2d 852, 857

(E.D. La. 2001); Newport Ltd. v. Sears, Roebuck & Co., No. Civ. A. 86-2319, 1995 WL 688799, at *2 (E.D. La. Nov. 21, 1995); Hickman v. Bates, 889 So. 2d 1249, 1255-56 (La. Ct. App. 2004). The court has wide discretion in awarding such sums. Hickman, 889 So. 2d at 1256.

Accordingly, in his papers, von Hassell seeks an attorneys' fee award. (See Compl. ¶¶ 37, 42, 47, 57, 67; Pl.'s Mem. at 2, 10, 12). To the extent that this request relates to the $14,420.50 paid to Mr. Solomon for his legal services from November 2006 to August 2007, von Hassell is entitled to reimbursement under his breach of contract claim. To the extent that von Hassell seeks to recover additional fees in connection with this suit, he has not provided the Court with any evidence regarding those expenses. Therefore, notwithstanding the language of Article 1958, von Hassell cannot recover any additional legal fees. See N.Y. State Ass'n for Retarded Children, Inc. v. Carey, 711 F.2d 1136, 1148 (2d Cir. 1983).

      D.      Detrimental Reliance

To state a claim for detrimental reliance under Louisiana law, a plaintiff must establish three elements: (1) a representation by word or conduct; (2) justifiable reliance; and (3) a detrimental change in position based on that reliance. La. Civ. Code Ann. art. 1967; Gangi Seafood, Inc. v. ADT Sec. Servs., Inc., 353 F. Supp. 2d 710, 715 (E.D. La. 2004); Bains v. Young Men's Christian Ass'n of Greater New Orleans, 969 So. 2d 646, 650 (La. Ct. App. 2007). Here, as noted above, there is no question that von

Hassell has proven all three elements of his claim. However, because the damages that a plaintiff can recover for detrimental reliance under Louisiana law are limited to the expenses incurred in relying on the misrepresentations and the loss suffered as a result, Garber v. Badon & Ranier, 981 So. 2d 92, 104-05 (La. Ct. App. 2008) (citing La. Civ. Code Ann. art. 1967), von Hassell's detrimental reliance claim does not entitle him to any damages beyond those recoverable under his other claims.

Moreover, detrimental reliance is a doctrine "not favored by the law." Id. at 105. Accordingly, detrimental reliance claims "must be examined carefully and strictly." Id. Here, when the representations allegedly made by Saint-Saens are carefully scrutinized, it is clear that the promises forming the basis for the detrimental reliance claim are all based on the Agreement or services that UNPS was to provide. There consequently is no basis for holding Saint-Saens separately liable simply by recasting von Hassell's claim as a detrimental reliance claim.

  E. Costs and Expenses

Von Hassell also seeks an award of costs. (Compl. ¶¶ 37, 42, 47, 57, 67; Pl.'s Mem. at 2, 12). Under Louisiana law, "[u]nless the judgment provides otherwise, costs shall be paid by the party cast." La. Code Civ. Proc. Ann. art 1920. Local Civil Rule 54.1 lists items, such as fees for service of process, which are taxable as costs. In his papers, however, von Hassell has identified no such items. Accordingly, the only cost he can recover is the $350 that he paid to file this action. See 28 U.S.C. § 1914(a); see

also Lafayette Ins. Co. v. C.E. Albert Constr. Co., Inc., 731 So. 2d 968, 972 (La. Ct. App. 1999). The Court can take judicial notice that von Hassell had to pay this amount. See Fed. R. Evid. 201.

    F.    Prejudgment Interest

In diversity cases, state law governs the plaintiff's entitlement to prejudgment interest. Am. Gulf VII, Inc. v. Otto Candies, Inc., No. Civ. A. 94-3905, 1997 WL 778684, at *3 (E.D. La. Dec. 12, 1997). "The decision whether to grant prejudgment interest and the rate used . . . 'are matters confided to the district court's broad discretion' . . . ." Endico Potatoes, Inc. v. CIT Group/Factoring, Inc., 67 F.3d 1063, 1071-72 (2d Cir. 1995) (quoting Commercial Union Assurance Co. v. Milken, 17 F.3d 608, 613-14 (2d Cir. 1994)). The Court must look to the forum state to determine which states' substantive law applies. See Terwilliger v. Terwilliger, 206 F.3d 240, 249 (2d Cir. 2000). Here, because the Agreement expressly provides that Louisiana law is controlling, it is clear that the New York courts would look to Louisiana law to determine prejudgment interest. See, e.g., Finucane v. Interior Constr. Corp., 264 A.D.2d 618, 620 (1st Dep't 1999).

Louisiana law provides that in a contract action prejudgment interest generally accrues at the time of breach. See Ashy v. Trotter, 888 So. 2d 344, 357 (La. Ct. App. 2004). However, the Louisiana courts draw a distinction between "active" and "passive" breaches. See Newport, 1995 WL 688799, at *12. An active breach occurs

16

when the obligor "negligently performs a contractual obligation"; a passive breach occurs when the obligor simply "neglects to do what he is obligated under a contract." Id. When an active breach has occurred, prejudgment interest "begins to run 'from the moment' of an active violation of [the] contract." City of Plaquemine v. N. Am. Constructors, Inc., 832 So. 2d 447, 465 (La. Ct. App. 2002). In cases involving passive breaches, on the other hand, prejudgment interest does not accrue until the date of judicial demand. See Sharbono v. Steve Lang & Son Loggers, 696 So. 2d 1382, 1387 (La. 1997) (when the "breach [is] of the 'passive' variety . . . interest would run on the date of plaintiff's formal demand") (citing Alexander v. Burroughs Corp., 359 So. 2d 607 (La. 1978)); Trans-Global Alloy v. First Nat'l Bank of Jefferson Parish, 583 So. 2d 443, 459 (La. 1991).

The contractual breach in this case is most appropriately characterized as a passive breach since the gravamen of von Hassell's complaint is that UNPS failed to do what it was required to do under the Agreement. Accordingly, von Hassell is entitled to prejudgment interest from May 1, 2007, the date that he filed his complaint. (See Docket No. 1). The statutory rates applicable to that prejudgment interest are 9.5 percent per annum for the period from then until December 31, 2007, and 8.5 percent per annum for the period from January 1, 2008, to date.[1] La. Rev. Stat. Ann. § 13:4202.

---

[1] In Silge, 510 F.3d at 160, the Second Circuit affirmed the denial of an award of prejudgment interest against a defaulting defendant because the complaint, as here, contained no mention of that form of relief. The facts of that case are distinguishable, however, because the
(continued...)

V.     Conclusion

For the reasons set forth above, I recommend that von Hassell be awarded judgment against UNPS in the amount of $131,933.07 plus costs in the amount of $350, and prejudgment interest on this amount at the rate of 9.5 percent per annum from May 1, 2007, to December 31, 2007, and at the rate of 8.5 per annum from January 1, 2008, through the date judgment is entered.

VI.    Notice of Procedure for Filing of Objections to this Report and Recommendation

The parties shall have ten days from the service of this Report and Recommendation to file written objections pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal Rules of Civil Procedure. See also Fed. R. Civ. P. 6(a) and (d). Any such objections shall be filed with the Clerk of the Court, with courtesy copies delivered to the chambers of the Honorable Lewis A. Kaplan and to my chambers at the United States Courthouse, 500 Pearl Street, New York, New York 10007, and to any opposing parties. See 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 6(d), 72(b). Any requests for an extension of time for filing objections must be directed to Judge Kaplan. The failure to file these timely objections will result in a waiver of those objections for purposes of

---

[1](...continued)
Court awarded compensatory damages equaling the full amount sought in the plaintiff's prayer for relief. Id. at 162. Here, even with prejudgment interest, the amount awarded to von Hassell will be substantially lower than the not "less than $200,000" demanded in his complaint. (See Compl. at 12). Accordingly, von Hassell is not securing an award for an amount greater than the Defendants reasonably might have contemplated when they chose to default.

18

appeal. See 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 6(d), 72(b); Thomas v. Arn, 474 U.S. 140 (1985); Frank v. Johnson, 968 F.2d 298, 300 (2d Cir. 1992).

Dated:    New York, New York
           August 25, 2008

                                  *[signature]*
                                  ————————————
                                  FRANK MAAS
                                  United States Magistrate Judge

Copies to:

Donald E. Watnick, Esq.
Law Offices of Donald Watnick
Fax: (212) 972-2245

Alain Saint-Saens
5500 Prytania Street, PMB 421
New Orleans, Louisiana 70115

University Press of the South, Inc.
5500 Prytania Street, PMB 421
New Orleans, Louisiana 70115